100 Cal.App.3d 34 (1979)
160 Cal. Rptr. 802
In re AUDREY D., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Respondent,
v.
AUDREY LARRY, Defendant and Appellant.
Docket Nos. 54243, 53070.
Court of Appeals of California, Second District, Division Five.
December 18, 1979.
*36 COUNSEL
Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Edward H. Shulman and Michael S. Turos, Deputy State Public Defenders, for Defendant and Appellant.
John H. Larson, County Counsel, Larry Cory and James M. Owens, Deputy County Counsel, for Plaintiff and Respondent.
OPINION
STEPHENS, J.
This is an appeal from two annual review orders of the Los Angeles Superior Court sitting as a juvenile court continuing in force the disposition order of June 15, 1976, placing appellant's daughter Audrey, a minor, in the custody of her maternal great-grandmother.[1]
*37 On July 23, 1971, a petition was filed by the Department of Public Social Services (hereinafter DPSS) on behalf of appellant's two children, Audrey and Vincent, pursuant to Welfare and Institutions Code section 600, subdivisions (a) and (b).[2] The petition alleged that Vincent (then five years old) was hospitalized on or about May 19, 1971, after sustaining a severe burn to his right hand which was not self-inflicted. The petition further alleged that Vincent had "incurred a split lip on May 19, 1971, which was not self-inflicted and further had a front tooth knocked out." As to Audrey, the petition as originally filed alleged that "on or about June 23, 1971, minor was medically treated for serious multiple contusions to her face and forehead." However, in the detention report filed in connection with the petition, the social worker stated that there were "(i)ndications ... that minor's injuries might have been of an accidental nature." Thus, at the adjudication hearing, the court ordered that the petition be amended by striking the allegations as to Audrey's injuries.[3] The court found that the allegations were true as amended. On the basis of the injuries to Vincent, the court adjudged Audrey and Vincent to be dependent children under then section 600, subdivisions (a) and (b). The court also found that both Audrey's and Vincent's welfare required that they be taken from the custody of their mother.
*38 On May 2, 1975, Audrey was returned to her mother's home under the supervision of DPSS. However, one year later the DPSS filed a supplemental petition alleging that Audrey (then seven years old) had suffered the following injuries: "... on or about April 26, 1976, minor suffered multiple contusions and abrasions on her face, throat, and upper back, and on or about April 27, 1976, minor suffered serious multiple contusions on her back, arms and legs, including a large bruise on her left hip overlaid with a clearly defined looped-shaped bruise, and none of these injuries were self-inflicted." The petition further alleged that during that same day, the mother entered the child's elementary school and while the child was present, struck her teacher, spat upon the school principal, and while using "profane and obscene language" took the child from school; that the child had previously been "absent from school without an acceptable excuse 57 days between November 17, 1975 and April 21, 1976"; that on April 28, 1976, the mother refused to allow the DPSS worker to enter their home or to see the child for supervisory purposes; and finally that on that same day, the mother was hospitalized at Camarillo State Hospital for psychiatric observation.
The mother entered a no contest plea to all of the allegations, which she stipulated to be an admission for purposes of juvenile court jurisdiction. On June 15, 1976, the court found the petition to be true as alleged. The court further found that "an award of custody to the parent would be detrimental to the minor" and ordered the child placed with her "maternal great-aunt." Thus, at both the disposition hearings, in 1971 and 1976, the court found that continued custody by the mother would be detrimental to Audrey.
Since the June 15, 1976, order, annual review hearings have been held, as required by section 366, to review the progress of the matter and to decide whether jurisdiction over the minor should continue. (See also Cal. Rules of Court, rule 1378(a).) Such an annual review hearing was held on October 14, 1977. The trial court found that the previous order placing the child outside the mother's custody should "remain in full force and effect." Subsequently, another annual review was held on May 4, 1978. At that hearing the court found that "at this point certainly the evidence is not sufficient to show to the court that either child should be returned to the custody of the mother." The court ruled that the placement order of June 15, 1976, would remain in full force and effect.
*39 Appellant contends as follows: (1) that the trial courts in both annual reviews erred when they continued the disposition order of June 15, 1976, awarding Audrey to a nonparent, without finding that the mother's custody of the child would be "detrimental" to the child; (2) that the orders following both review hearings were not supported by sufficient evidence; (3) that, in the May 1978 annual review, the burden of proof was incorrectly placed upon appellant to demonstrate that the child should be returned to her.

I

THE ANNUAL REVIEW HEARING OF OCTOBER 14, 1977
(1) (See fn. 4.) We have concluded that the appeal of the disposition order dated October 14, 1977, is technically moot.[4] Since the basic thrust of appellant is the same as to both the October and May orders, one analysis covers both.

II

THE ANNUAL REVIEW HEARING OF MAY 14, 1978
The primary issue raised by appellant's appeal of the review hearing of May 4, 1978, is whether at an annual review in which the parent *40 contests renewal of a disposition order taking custody away from the parent under section 300, subdivisions (a) and (b), the burden of proof is on the DPSS to show that parental custody would be injurious to the child, notwithstanding that the previous order was based upon showings and findings that such custody was injurious. We conclude that the answer is "No." (2) The burden of proof in such an annual review hearing is on the parent to show change of circumstances or other evidence that demonstrates that returning custody to the parent would not be detrimental to the child. The hearing is in the nature of an order to show cause: "The court shall advise all persons  and [their right] to show cause  why the jurisdiction  should be terminated." We recognize that the parent here does not dispute "jurisdiction," and attacks solely the disposition.
Appellant's argument that the burden of proof should be on the DPSS is based upon inference drawn from In re B.G., supra. As held in that case, a child cannot be either taken or withheld from the parent's custody without a showing and express finding that parental custody would be detrimental to the child. (11 Cal.3d at pp. 696, fn. 25, 698-699.) From this stated rule appellant seeks to infer another: that where a dependent child is ordered placed out of the parent's custody pursuant to both a showing and express finding that continued parental custody would be detrimental to the child, and where, in addition, the parent subsequently contests the renewal of such order at an annual review hearing, the burden of proof is on the party opposing parental custody (here the DPSS) to make a de novo showing of detriment. The case cannot be reasonably stretched to support appellant's contention.
It is true that In re B.G. involved an annual review hearing. It is also true that the California Supreme Court held, under the circumstances of that case, that the trial court could not refuse to restore custody to the parent unless there was a "clear showing" that parental custody would be detrimental to the child. Nevertheless, as explained below, the facts of In re B.G. are materially dissimilar to those of the present case.
In B.G., the trial court in an annual review hearing refused to restore to a mother custody of her two children, despite the fact that there had never been any finding that her custody of them would be detrimental to the children. The father had brought the children to the United States from Czechoslovakia without the mother's consent. The mother remained in Czechoslovakia. When the father became ill and died, the *41 mother was unable to immediately come to this country. At a dependency hearing  of which the mother had no notice  the children were adjudged dependents of the juvenile court and placed with foster parents. The mother later came to the United States and appeared at an annual review hearing in order to regain custody of her children. At that hearing, the trial court expressly found that the mother was a fit parent, yet it refused to return custody to her. It based this decision solely upon its finding that the children's "best interest" would be served by continued placement with the foster parents. Thus, at no time, either at the annual review or at the prior dependency disposition hearing, had it been found that the mother's custody would be detrimental to the children. Under these circumstances, the Supreme Court reversed the order of the trial court and held that pursuant to Civil Code section 4600, the juvenile court is permitted to award custody to a nonparent "only upon a clear showing that such award is essential to avert harm to the child. A finding that such an award will promote the `best interests' or the `welfare' of the child will not suffice." (In re B.G., supra, at pp. 698-699.)[5]
We agree with appellant that B.G. makes it clear that section 4600 applies to annual review hearings. Nevertheless, we reject the conclusion that appellant seeks to draw from this: B.G. did not purport to require a de novo showing of detriment in order to renew a prior disposition order taking a child from the parent's custody. The procedural posture of the annual review hearing in B.G. was unique. The mother had not previously been given the opportunity to litigate whether her *42 custody of the children would be detrimental to them. Therefore, the Supreme Court required a showing and finding of detriment before the children could be kept from their mother's custody.
In the present proceeding, the disposition order under review was one expressly based upon a finding and showing of detriment to Audrey. In September 1971, the court found that appellant's custody of Audrey would be detrimental to the child on the basis of injuries suffered by her brother, Vincent, which were "not self-inflicted." Audrey was subsequently returned to appellant's custody. Yet, one year later Audrey was again taken from appellant's home pursuant to a finding of detriment based upon injuries to Audrey herself and the emotional unstability of appellant. Under such circumstances, custody was correctly taken from appellant, not merely to promote the best interests of Audrey, but rather because of express findings that appellant's custody would be detrimental to the child. Therefore, we can only conclude that B.G. does not support appellant's contention regarding allocation of the burden of proof and we must look elsewhere to determine where that burden should be properly placed.
Section 366 requires at least annual review hearings to review orders adjudging a minor to be a dependent child of the juvenile court pursuant to section 300.[6] It does not require de novo showing of detriment. The court considers both the original and supplemental probation reports as well as any other evidence brought before it. As part of a parent's case, cross-examination of witnesses would be reasonable. The annual review in question is not one in which the DPSS sought to modify an existing disposition order which had awarded custody to the parent under supervision of the DPSS to an order which would take custody away from the parent. In such a case, B.G. makes clear that before the child shall be taken from the physical custody of the parent a showing and finding of detriment must be made. (In re B.G., supra, 11 Cal.3d at p. 696, fn. 24.) Clearly, in such a case the burden would be on the DPSS to make a showing upon which a finding of detriment could be based. Nor as explained above, is this an annual review of a prior disposition order that awarded children to a nonparent without a showing and finding of detriment; that was the situation in B.G., and that case made clear that the burden would be on the DPSS in such a case.
*43 We believe that the question can be resolved by reference to section 388, which authorizes hearings to modify disposition orders or to terminate jurisdiction upon petition by a parent or other interested party.[7] Under section 388, a parent may petition the court to modify a previous disposition order or to terminate jurisdiction over the minor "upon grounds of change of circumstance or new evidence...." The court may hear the petition only "if it appears that the best interests of the child may be promoted by the proposed change of order...." The burden of proof in such a proceeding is on the petitioning parent to show that change is warranted. (See In re B.G., supra, 11 Cal.3d at p. 691.) Sections 366 and 388 share a common purpose: to determine the appropriateness of continued juvenile court jurisdiction and of current disposition orders; the statutes, therefore, may be considered in pari materia in ascertaining the legislative intent in allocating the burden of proof at an annual review hearing. Thus, the burden in both proceedings is on the parent to show change of circumstances or new evidence to warrant modification of the previous order.
Respondent DPSS urges that by parity with section 388, the parent must show that a return of parental custody would be in the "best interest of the child." Section 388 does not state what facts or circumstances *44 must be proved to obtain an order returning custody of the child to the parent. However, Civil Code section 4600 contemplates that the fact essential to justify a refusal to restore parental custody is that such custody is detrimental or injurious to the child; the fact that parental custody is not in the child's best interest is not sufficient. (See In re B.G., supra, 11 Cal.3d at pp. 696-699.) Thus, the parent must show that parental custody would no longer be detrimental or injurious to the child. If the parent establishes that a return of custody would not be detrimental or injurious to the child, the court must order the return of the child, notwithstanding that it does not find that such return would promote the "best interests" of the child.
We believe that our decision is also supported by the factors that courts consider when they allocate the burden of proof to one party or another. (See Evid. Code, § 500, Law Revision Com. comment; see also Jefferson, Cal. Evidence Benchbook (1972), § 45.2.) First, after the child has been taken from parental custody pursuant to a clear showing that such custody was injurious to the child, both the knowledge of the parties and the availability of evidence favor placing the burden on the parent to show change of circumstance or new evidence. For example, even if the parent continues to suffer from the same mental disorders that necessitated the child's being taken away, it may be very difficult for the social worker to make a "clear showing" of that fact at an annual review hearing. With the child out of the home, the social worker faces severe practical difficulties in compiling new facts bearing upon the progress of the parent. The most important source of evidence  the parent's actual treatment of the child  is no longer available. The parent, on the other hand, has first-hand knowledge of everything that has happened to him or her that bears upon the custody issue.
Secondly, we believe that in the absence of proof to the contrary, there is an unacceptibly high probability that the previously existent injurious circumstances may continue to exist. For example, where a parent's emotional disorder is the cause of neglect of a child to the point that the child incurs serious illness or injury, common experience does not tell us that such a disorder will cease to exist after the mere passage of time. To allocate to the state or county the burden of reproving detriment at every annual review hearing is to impose a presumption that those circumstances that led to the removal of the child from parental custody no longer exist. Yet, a presumption that such a significant change has occurred is based upon neither logic nor reason.
*45 Finally, placing the burden on the parent to show change of circumstances also yields the most desirable result in terms of public policy in the absence of proof of the particular fact. Once a parent's custody has been found to be injurious to a child because of extreme neglect or abuse, there then exists a proven risk of injury to the child. Such injury is potentially permanent and irreversible. It may even result in the death of the child. Or, it may involve emotional scars or permanent physical impairment, both of which create costs that society may have to bear throughout the child's life. On annual review of a dependency proceeding, deprivation of parental custody is temporary where changed circumstances are shown to the satisfaction of the trial court. We recognize that any interference with a parent's custody impairs a fundamental interest. Yet, it is settled that that interest is outweighed by the child's interest where extreme neglect or abuse is demonstrated. We believe that in the absence of proof, it is more desirable to protect the child from the previously demonstrated risk of injury, than it is to protect the parent against a temporarily continued interruption of parental custody.
We turn now to appellant's contention that there was insufficient evidence to support a finding that parental custody would be detrimental to her child. It is clear that our resolution of the burden of proof issue disposes of appellant's contentions in this regard as well. The burden of proof was on appellant  not upon respondent. Therefore, no evidence except that contained in the supplemental report was required to support the renewal of the custody order.
Because the burden of proof was on appellant to show that appellant's custody would not be injurious to Audrey, the evidence could justify reversal only if it affirmatively established an abuse of judicial discretion. (3) A review of the record of the May 4, 1978, hearing (as well as that of Oct. 1977) makes clear that such fact was not established. The record fails to show any alteration in appellant's emotional condition, which previously had proved injurious to her children. The evidence shows that after the October 1977 annual review, appellant failed to attend psychological therapy, although such therapy had been required by the court as a condition for visiting her child. As a result, the only professional assessment of appellant's current emotional condition before the court was a six-month-old report by a psychological therapist that appellant had been seeing. In that report, the therapist stated: "At this point, she lacks the coping skills to function adequately in the role of parent." In addition, Audrey testified that she wanted to *46 remain with her grandmother; further, the child said that although she wished to visit her mother "sometimes," she wanted to make such visits only in the presence of her grandmother or the social worker. This constitutes substantial evidence that returning custody to the parent would be injurious to the child. Given these facts, we can only conclude that appellant failed to conclusively establish that parental custody would no longer be detrimental to Audrey.
Finally, we turn to appellant's contention that the trial court erred by failing to make an express finding of detriment when it reviewed the order continuing nonparental custody. As previously stated, the fact essential to justify the renewal of a custody order that placed the child with a nonparent is that parental custody would be detrimental to the child. In this case, the burden was on appellant to prove through change of circumstance or new evidence that such detriment no longer existed. (4) Appellant was entitled to an express finding on this issue. (Civ. Code, § 4600; In re B.G., supra, 11 Cal.3d at pp. 696-699.) It is impossible to tell from the record whether the court's renewal of the prior custody order was based upon a finding of continued detriment or rather on the child's "best interest." The court, therefore, erred when it failed to make an express finding on the issue of detriment. However, it is clear that this error was not prejudicial. Appellant testified that she desired custody of Audrey. Clearly this testimony is relevant on the issue of "detriment." However, the remainder of appellant's testimony focused on problems of visitation that had occurred since the child was placed with her grandmother. This testimony bore solely on the issue of whether an alternative nonparental custody placement would be in the child's best interest. Aside from the appellant's desire for the return of the child, no evidence was produced that supported a finding that parental custody would not be detrimental. As previously stated, appellant failed to show evidence of any alteration of the previous mental condition that had resulted in harm to her children. The failure of the trial court to make an express finding on the issue of detriment was therefore not prejudicial.
The judgment is affirmed.
Kaus, P.J., and Hastings, J., concurred.
Appellant's petition for a hearing by the Supreme Court was denied February 14, 1980.
NOTES
[1] Audrey's relative is variously described in the record as her great aunt, great grandmother and grandmother. Fortunately, their true relationship is not at issue. The appeals from each of the annual review orders in question were consolidated on August 16, 1978.
[2] Hereinafter, unless stated otherwise, all code references are to the Welfare and Institutions Code. Former section 600, subdivisions (a)-(d) has been renumbered as section 300, subdivisions (a)-(d). Section 300 states: "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court: (a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control. No parent shall be found to be incapable of exercising proper and effective parental care or control solely because of a physical disability, including, but not limited to, a defect in the visual or auditory functions of his or her body, unless the court finds that the disability prevents the parent from exercising such care or control.

"(b) Who is destitute, or who is not provided with the necessities of life, or who is not provided with a home or suitable place of abode.
"(c) Who is physically dangerous to the public because of a mental or physical deficiency, disorder or abnormality.
"(d) Whose home is an unfit place for him by reason of neglect, cruelty, depravity, or physical abuse of either of his parents, or of his guardian or other person in whose custody or care he is."
[3] Appellant does not object to the annual review orders as they relate to her son Vincent; only the placement of Audrey is contested.
[4] "An appellate court will not review questions which are moot and which are only of academic importance. It will not undertake to determine abstract questions of law ... [where] no substantial rights can be affected by the decision either way." (Keefer v. Keefer (1939) 31 Cal. App.2d 335, 337 [87 P.2d 856].)

As to the present case, our decision as to the two alleged errors in the October 14, 1977, order can have no effect upon the child's placement outside the home. It is the subsequent annual review hearing also before us that must control that issue. Appellant did not contest the two orders of the court below insofar as they ruled that Audrey remain a dependent of the court and subject to its jurisdiction pursuant to section 300. The parent at an annual review hearing has the burden of proof to show cause why the jurisdiction of the juvenile court should be terminated. (In re B.G. (1974) 11 Cal.3d 679, 691 [114 Cal. Rptr. 444, 523 P.2d 244]; Cal. Rules of Court, rule 1378(d).) Appellant does not contend that a requisite showing was made that the child's interest justified the termination of jurisdiction. Rather, appellant limits her attack to the court's disposition order which continued placement of the child outside appellant's custody. The issues of juvenile court jurisdiction and disposition are separate and distinct. (See In re B.G., supra, at p. 688.) Unless jurisdiction is terminated, a subsequent annual review is required; each such review is authorized to again adjudicate whether the child should be placed in the parent's custody. (§ 366; Cal. Rules of Court, rule 1378(d); In re B.G., supra, at p. 691, fn. 16.) In short, unless jurisdiction is terminated, an annual review can only affect the placement of the child during the period lasting until the next annual review. Since a later annual review hearing has occurred and is also before us on appeal, any alleged errors in the prior disposition order of October 14, 1977, are now beyond the power of this court to rectify.
[5] Section 4600 reads as follows: "In any proceeding where there is at issue the custody of a minor child, the court may, during the pendency of the proceeding or at any time thereafter, make such order for the custody of such child during his minority as may seem necessary or proper. If a child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody, the court shall consider and give due weight to his wishes in making an award of custody or modification thereof. Custody should be awarded in the following order of preference: (a) To either parent according to the best interests of the child.

"(b) To the person or persons in whose home the child has been living in a wholesome and stable environment.
"(c) To any other person or persons deemed by the court to be suitable and able to provide adequate and proper care and guidance for the child.
"Before the court makes any order awarding custody to a person or persons other than a parent, without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interests of the child. Allegations that parental custody would be detrimental to the child, other than a statement of that ultimate fact, shall not appear in the pleadings. The court may, in its discretion, exclude the public from the hearing on this issue."
[6] Section 366 reads in pertinent part as follows: "Every hearing in which an order is made adjudging a minor a dependent child of the juvenile court pursuant to Section 300 and every subsequent hearing in which such an order is made, except a hearing at which the court orders the termination of its jurisdiction over such minor, shall be continued to a specific future date not more than one year after the date of such order. The continued hearing shall be placed on the appearance calendar and the probation officer shall make an investigation, file a supplemental report and make his recommendation for disposition. The court shall advise all persons present of the date of the future hearing and of their right to be present, to be represented by counsel and to show cause, if they have cause, why the jurisdiction of the court over the minor should be terminated...."
[7] Section 388 reads as follows: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court or the child himself through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall be verified and, if made by a person other than the child, shall state the petitioner's relationship to or interest in the child and shall set forth in concise language any change of circumstance or new evidence which are alleged to require such change of order or termination of jurisdiction.

"If it appears that the best interests of the child may be promoted by the proposed change of order or termination of jurisdiction, the court shall order that a hearing be held and shall give prior notice, or cause prior notice to be given, to such persons and by such means as prescribed by Section 386, and, in such instances as the means of giving notice is not prescribed by such sections, then by such means as the court prescribes."