[Nos. B043976, B058852, B060088. Second Dist., Div. Four. Aug. 27, 1992.)

In re MICHAEL B., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S
SERVICES, Plaintiff and Respondent, v.
VIRGINIA B., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions directed to be published follow.

## Counsel

Jane Winer, under appointment by the Court of Appeal, for Defendant and Appellant.

De Witt W. Clinton, County Counsel, Joe Ben Hudgens, Deputy County Counsel, Rosanne Y. Lin and Thomas Lyon for Plaintiff and Respondent.

## Opinion

TAYLOR, J.*—Virginia B. appeals from a jurisdictional and dispositional judgment declaring Michael B.[1] a dependent child of the court and other orders made on October 31, 1988, and May 4, 1989; orders made April 5, 1991, denying appellant's petition, under Welfare and Institutions Code section 388, for a modification of order and terminating juvenile court jurisdiction; and the order made April 29, 1991, lifting the stay of the April 5, 1991, order terminating jurisdiction.

Appellant's various contentions are set forth hereunder, as they arise in our discussion of the facts. Two of the contentions raised are discussed in the published portion of this opinion.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.

[1]Michael B. was born March 24, 1982.

. . . . . . . . . . . . . . . . . . . . . . . . .*

## SECTION 388 PETITION

On April 3, 1991, the parties appeared in court for a judicial review hearing and a hearing on a petition previously filed by appellant pursuant to Welfare and Institutions Code section 388.[8] The parties agreed that the issues for decision were those of custody, visitation and termination of the dependency court's jurisdiction.[9]

Blake, Michael's father, testified that appellant was a caring mother, loved Michael a lot, was bright and had much to offer Michael in the area of education. Blake testified he was employed as a floor refinisher, working from approximately 8 a.m. to 5 p.m.; that he took care of Michael in the morning before work, and that Blake's sister got Michael off to school in the morning. Blake and Michael lived in the upstairs portion of a large house in which Blake's sister lived. Blake's sister watched Michael after school.

Blake testified that appellant always had a violent temper, and her temper got worse after Michael was born. On the Saturday before the hearing, Michael visited with appellant and got so upset he did not want to visit with her the following day. Because of this, Blake did not allow visitation the next day. Michael had told Blake that appellant "blew up" on four different occasions on Saturday, not just with Michael but with the monitor, telling the monitor, "You get your own child." Michael was upset the whole night, did not eat his dinner and was worried about the visit the next day.

Blake testified that he had a firm and loving relationship with Michael and Michael appeared to be comfortable in his presence. Blake allowed Michael

---

*See footnote, *ante*, page 1698.

[8]Welfare and Institutions Code section 388 provides in relevant part: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstances or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. . . . [¶] If it appears that the best interests of the child may be promoted by the proposed change of order or termination of jurisdiction, the court shall order that a hearing be held. . . ."

Further unspecified references to statutory citations are to the Welfare and Institutions Code.

[9]The changes of circumstance alleged by appellant in her Welfare and Institutions Code section 388 petition, as they pertained to the issues of custody and visitation, were that Michael's mother had allowed him to cooperate with his father; that Michael was being forced to change his attitude to match his environment; that Michael was under stress as shown by the fact that he had repeated first grade and been in speech therapy; that it is naturally evil to divide a child from his parent and bond him to the other parent; and that appellant is consistent, reliable and has been stable even during illness.

to have telephone conversations with appellant. There had been problems several times when appellant mentioned "court" or "custody matters" or called Blake names.

At the time of this hearing, Michael was in second grade and doing well in school.

Donald Ray Reinschmidt dated appellant and had monitored visits with Michael. He observed appellant to be an excellent mother whose son was "her whole life." He monitored about five visits when visitation first started. Since about the end of 1989, he had not served very often as a monitor. His opinion concerning appellant was based primarily on the period of time prior to the end of 1989.

William Baird had acted as an approved monitor for visits between appellant and Michael and had been the monitor during the last visit on the preceding Saturday. Appellant got angry and complained of being "kicked around" by Blake. She got angry at Baird because he did not want to drive to the beach. Sometime after 5 p.m., Michael got extremely upset because he realized the appellant did not have a phone and he was expected to phone his father. Michael burst into tears. Appellant told Michael she would tell Blake it was not his fault, and she and Michael cried for about 10 minutes while Michael sat on her lap. Michael did not appear to be frightened of appellant at any time during the Saturday visit.

Dr. Fred Jerome Goldstein, a clinical psychologist, testified he had been retained by appellant as an expert in this case. He tested and evaluated appellant and Michael. He reviewed voluminous material and wrote evaluations. His report dated January 18, 1990, was received into evidence, as were other reports and declarations from appellant's friends. Goldstein stated that appellant's psychotic episodes were predictable, and that, before going into a manic or depressive state, she would have signs of an onset. Appellant had learned to anticipate these and to act to protect her child. Goldstein opined that when something "really . . . threatening" to appellant happened, like having her child taken from her in a court hearing, appellant suddenly did "something crazy like taking the child away all night." Then she "ends up [at] Olive View . . . ; parking her car and picking up rocks and putting [them] into the trunk . . . and having police come by and find she's incoherent."

Goldstein found appellant resistant to his counseling efforts. It was Goldstein's opinion that, for the foreseeable future, Michael should continue living with Blake.

Following receipt of evidence, the court stated that clear and convincing evidence had not been presented that any of the allegations of the section 388 petition relating to changed circumstances were true, or that there had been any change of circumstances since the previous court orders which would indicate that changing those orders were in the best interest of the child. The court awarded joint legal custody to appellant and Blake, giving Blake sole physical custody and permitting reasonable visitation to appellant.[10] Additionally, the court ordered that "if either party seeks a modification of this court's family law order, the confidentiality of the juvenile court proceedings and all reports which have been prepared subject to a court order for the juvenile court dependency proceedings [*sic*] will be admissible into evidence in a family law court."

■ Appellant contends that the court's order denying her request to modify or set aside its prior determination as to custody and visitation must be reversed because the court erred in requiring that she prove the existence of changed circumstances by "clear and convincing evidence." We do not agree.

■ A dependency court order may be changed or modified under Welfare and Institutions Code section 388 if a petitioning parent establishes one of the statutory grounds, changed circumstance or new evidence, for the modification, and also proves the proposed change would promote the best interests of the child. (§ 388; Cal. Rules of Court, rule 1432(c).) The parent requesting the change of order has the burden of establishing that the change is justified. (*In re Audrey D.* (1979) 100 Cal.App.3d 34, 43 [160 Cal.Rptr. 802].) The standard of proof is a preponderance of the evidence. (*In re Fred J.* (1979) 89 Cal.App.3d 168, 174-175 [152 Cal.Rptr. 327].)

■ Although the court stated in its ruling "the court is not convinced by clear and convincing evidence that any of the allegations of the 388 petition are true," it also stated that it "[could not] find that there [have] been any change of circumstances since the previous court orders which would militate toward changing the previous orders in the best interest of the child." Since the court was unable to find *any* changes of circumstances warranting a change of the prior orders, it is clear that the same determination would have been made, even under a lower standard of proof, i.e., by a preponderance of the evidence. Our review of the evidence presented, as against the changes of circumstances set forth in the section 388 petition, confirms this.

---

[10]Before concluding the hearing, the court gave the parties the opportunity to work out an agreeable visitation schedule. They did so, and that schedule was made the order of the court respecting visitation.

■ Whether a previously made order should be modified rests within the dependency court's discretion, and its determination will not be disturbed on appeal unless an abuse of discretion is clearly established. (*In re Corey* (1964) 230 Cal.App.2d 813, 832 [41 Cal.Rptr. 379].) We find no abuse of discretion.

### TERMINATION OF JURISDICTION

The court terminated jurisdiction of the juvenile court but stayed its order until April 29, 1991, to permit a file to be opened in family law court. With the agreement of the parties, the court directed counsel for the minor to have a family law file opened for purposes of having the court's custody and visitation order filed therein. A copy of the family law order so entered was to be filed in the dependency court.

The minute order of April 29, 1991, reflects that the order was filed by minor's counsel, and jurisdiction was terminated on that date.

The appellant argues that the termination of jurisdiction must be reversed because of errors made in the court's prior orders. As discussed above, we find no error warranting reversal.

■ Appellant's final contentions relate to the court's order permitting access by the family law court to records of the juvenile dependency court proceedings and to reports prepared subject to court order in those proceedings "if either party seeks a modification of [the juvenile] court's family law order." Appellant argues that this order exceeds the juvenile court's jurisdiction under section 362.4,[11] because that section gives the court authority to issue orders determining custody or visitation only, and because it violated appellant's "protected liberty interest" in the confidentiality of the court's records.

Appellant points us to the case *In re Sarah M.* (1991) 233 Cal.App.3d 1486 [285 Cal.Rptr. 374] to support her assertion that the court exceeded its jurisdiction under section 362.4. In dicta, the court in *Sarah M.* said that the

---

[11]Welfare and Institutions Code section 362.4 provides, in pertinent part: "When the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court prior to the minor's attainment of the age of 18 years, . . . the juvenile court on its own motion, may issue an order . . . determining the custody of, or visitation with, the child. [¶] . . . [¶] If no action is filed or pending relating to the custody of the minor in the superior court of any county, the juvenile court order may be used as the sole basis for opening a file in the superior court of the county in which the parent, who has been given custody, resides. . . . The clerk of the superior court shall, immediately upon receipt, open a file, without a filing fee, and assign a case number."

juvenile court appeared to have exceeded its jurisdiction by issuing orders *relating to* visitation rather than, or in addition to, determining custody or visitation. One of two orders attacked in *Sarah M.* directed the father to continue in psychotherapy; the other placed a paternity action on the calendar of a domestic relations court for a determination as to whether the mother was to participate in counseling and psychotherapy. The case before us is clearly distinguishable, as no order was made bearing on the conduct of either party.

The juvenile court's order set forth its custody and visitation determinations and did so with specificity. When the juvenile court terminated its jurisdiction over the minor, it properly transferred its custody and visitation order to the superior court under the authority of section 362.4. Thereafter, the parties may seek relief or modification of that order in the superior court based on a showing of "the best interest of the child." (Civ. Code, §§ 4600, 4608; cf. *In re Michelle M.* (1992) 8 Cal.App.4th 326 [10 Cal.Rptr.2d 64].)

To assist the family law department of the superior court in any later determinations it might be called upon to make, the juvenile court ordered that its records and reports should be made available to that court. This order is separate and distinct from the juvenile court's custody and visitation orders but pertain directly to them and to changes that might later be sought on a showing relating to the best interest of the child. We therefore conclude that the order does not exceed the juvenile court's jurisdiction under section 362.4.

Appellant contends that the order violated her "protected liberty interest" in the confidentiality of the juvenile court records without due process of law. She points us to the case of *McLaughlin* v. *Pernsley* (E.D.Pa. 1988) 693 F.Supp. 318 as illustrative of her point, stating that the issue there was whether the city's social services department violated the foster parents' due process rights when it failed to give 15 days' notice of the decision to move the foster child and of their right to appeal that decision.

Section 827 governs the confidentiality of juvenile court records. Subdivision (b)(1) reaffirms the belief of the Legislature that "juvenile court records, in general, should be confidential." Subdivision (a) provides that: "Except as provided in Section 828,[12] a petition filed in any juvenile court proceeding, reports of the probation officer, and all other documents filed in any such case or made available to the probation officer in making his or her

---

[12]Section 828 is not applicable to these proceedings. Certain other statutory exceptions exist. (See 10 Witkin, Summary of Cal. Law (9th ed. 1989) Parent and Child, § 502, p. 554, et seq., and (1992 supp.) pp. 110-111.)

report, or to the judge, referee or other hearing officer, and thereafter retained by the probation officer, judge, referee, or other hearing officer, may be inspected only by court personnel, the district attorney, the minor who is the subject of the proceeding, his or her parents or guardian, the attorneys for the parties, *and such other persons as may be designated by court order of the judge of the juvenile court upon filing a petition therefor.*" (Italics added.)

The record before us is devoid of any filed petition requesting release of juvenile court records or reports. Rather, it appears from the record that, during an unreported meeting in chambers between court and counsel, the court indicated its belief that an order waiving confidentiality of the juvenile court's records and reports would be beneficial to the family law court for its use in whatever modification matters might be brought before it. When the court returned to the record, it stated, "I did have a conference in chambers and I did give a very tentative decision to all counsel about how I felt . . . and indicated to counsel that it was tentative and I would listen to argument. . . . [¶] If anyone wants to argue, you may do so, or you may waive argument." Appellant's counsel[13] responded, "The only part I would argue, . . . the court has indicated [it will] require the parties to waive constitutionality of the 730's in this matter in the family law orders. [¶] I just note my legal objections for the record; otherwise, I'll submit on the record." No objection to the proposed order waiving confidentiality of records and reports was expressed by counsel for the minor or counsel for the father.

On the facts before us, we can find no violation of appellant's due process rights, nor do we find that the court exceeded its authority under section 827, subdivision (a). Inasmuch as that section permits the court to authorize disclosure of its proceedings to such other persons as it may designate "upon filing a petition therefor," there is no statutory bar to such disclosure. Although no petition had been filed seeking disclosure, the court, on its own motion, gave notice to the parties and an opportunity to be heard as to whether such disclosure should be made. We do not find this procedure to be beyond the scope of section 827, subdivision (a), or violative of appellant's due process rights. The disclosure contemplated was limited, permitting disclosure only to a family law court, if that court determined to avail itself of the records for purposes of a hearing or hearings relating to custody and visitation of the minor. The order was reasonable inasmuch as it related to the evidence on which the juvenile court's custody and visitation orders were made, and against which future requests for modification based on change of circumstances or new evidence, if made, would be measured. Given the limited nature of the disclosure, the notice given and opportunity to be heard,

---

[13]At the time of the hearing on the section 388 petition, and for a number of months before, appellant was represented by Stephen Fluharty, who had been privately retained by her.

and acknowledging that there is no absolute right to confidentiality of the juvenile court's records, we find no abuse of the court's discretion and no violation of appellant's due process rights.

The judgment and orders are affirmed.

Woods (A. M.), P. J., and Epstein, J., concurred.

A petition for a rehearing was denied September 11, 1992.