10 Cal.App.4th 1468 (1992)
13 Cal. Rptr.2d 645
In re DIANA G. et al., Persons Coming Under the Juvenile Court Law.
HUMBOLDT COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
ROBERT G. et al., Defendants and Appellants.
Docket No. A056153.
Court of Appeals of California, First District, Division Three.
November 18, 1992.
*1472 COUNSEL
Francia M. Welker and Marilyn B. Miles for Defendants and Appellants.
James P. Lough, County Counsel, and Shelley J. Morrison, Deputy County Counsel, for Plaintiff and Respondent.
Sheila L. Brogna and Donna Wickham Furth for Minors.
OPINION
WHITE, P.J.
Robert and Renee G. (Parents) appeal from a final order terminating their parental rights over their four children, Diana, Robert, Jr., *1473 Daniel and Brandy, following a contested hearing pursuant to Welfare and Institutions Code section 366.26.[1] We affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND
In December 1989, the Humboldt County (the County) Department of Social Services, Child Welfare Services (the Department), filed a juvenile dependency petition in the juvenile court of Humboldt County (the court), alleging that the four children of Robert G. (Father) and Renee G. (Mother) came within the provisions of section 300. At the time of the original petitions, the children had the following ages: 9 years (Diana); 8 years (Robert, Jr.); 6 years (Daniel); and 4 years (Brandy).
Attached to the petitions were numerous reports and records by both Department social workers and employees of the County sheriff's department, documenting the Parents' severe physical and emotional abuse of the children, the seven referrals to the Department for child neglect since March 1980, the Department's repeated unsuccessful attempts to assist the Parents by providing services or making recommendations for better parenting, and the Parents' hostile, threatening and violent response to the efforts of the Department.
Appellant Parents were arraigned on December 18, 1989. Each parent was separately appointed counsel, and the four children were also appointed separate counsel. The children were detained in the custody of their paternal grandparents. On December 29, 1989, all four children moved to allow testimony of minors in chambers at the contested jurisdictional hearing. The declaration of the children's counsel stated that all four of the children were afraid of their Father; two of them would see him only if their Mother was also present because they were afraid of being alone with him, and the other two were unwilling to see him under any circumstances. The motion was granted over the objections of Father.
At the jurisdictional hearing on January 5, 1990, both Parents admitted to the allegations of an amended petition alleging that all four children came within the provisions of section 300, subdivisions (a) and (b). The parties stipulated that the Department would prepare a dispositional report and services agreement addressing the following issues: adequate food, hygiene, clothing and medical care for the minors; emotional harm suffered by the minors; psychological evaluations of both Parents; drug and alcohol abuse evaluations of Father; and counseling and mental health evaluations of the *1474 children. The court ordered supervised visitation, and notified the Parents of the possibility of a permanent plan and loss of their parental rights within 12 to 18 months if they did not comply with the services agreement.
In February 1990, the Department applied for and was granted a restraining order to prevent Father from contacting the children without the supervision of a Department social worker. At the contested disposition hearing on March 2, 1990, the court continued the children in the care of their paternal grandmother, left the restraining order in effect, and continued the matter for six-month review on September 4, 1990. The court also warned the Parents that if they did not cooperate and comply with the reunification services agreement, they would lose their children at the end of 12 months.
On June 19, 1990, the Department filed supplemental juvenile dependency petitions for the four children requesting that they be placed in foster care, on the grounds that the paternal grandparent could no longer provide care for them. In addition, the supplemental petitions asked that the restraining order prohibiting Father from contacting the caretaker be vacated, and that visitation between the children and the Parents be unsupervised at the discretion of the Department. On June 20, 1990, the court agreed to place the children in foster care, but declined to permit unsupervised visitation at that time. On June 26, 1990, following the submission of another Department report, the court vacated the restraining order as to Father and permitted unsupervised visitation at the discretion of the social worker and the concurrence of the foster parents.
The six-month review hearing took place on September 4, 1990. Neither of the Parents was present, and the matter was submitted on the Department's report. The report stated that the Parents had not complied with recommendations and objectives of the services agreement in that they continued to engage in corporal punishment as well as physical and emotional abuse of their children and each other; manifested no understanding of their problems or interest in solving them as recommended; and had failed to attend parenting classes or counseling sessions. Both Parents had informed the Department social worker that they would not do anything else to get their children back, and indicated that they realized that this meant they would probably lose their children. On the basis of the recommendations in the Department's report, the court found that reasonable services had been provided or offered to the Parents; that the Parents had failed to comply with the services agreement; and that return of the children to their Parents would create a substantial risk of detriment to their physical and emotional well-being. The court ordered that reunification services continue, that the children be continued as dependents in foster care placement, that visitation be *1475 suspended, that the Parents cooperate with the reunification plan, and that they again be advised that they would permanently lose custody and control of the children if the objectives of the reunification plan were not met.
On October 29, 1990, the trial court heard and granted Father's motion for appointment of new counsel. In January 1991, both Parents separately filed motions for visitation, which were opposed by the Department and counsel for the children. After hearing argument, the court referred the matter to the master calendar clerk. On March 4, 1991, both Parents joined in asking that the matter of visitation be heard and decided. The newly appointed counsel for Father told the court that her client had been "extremely upset with the system," which had delayed his acceptance of the services offered by the Department; that he was now taking advantage of and participating in those services; and that he was willing to agree to supervised visitation of the children. The court attempted to schedule a hearing, but was unable to do so because of the unavailability of father's counsel. The court set the matter for 12-month hearing, and admonished both counsel that their clients' failure to comply with the court's orders placed them "dangerously close" to losing custody of their children.
The combined hearing on 12-month review and the Parents' motion for visitation was held beginning on April 23, 1991. On May 14, 1991, the court issued its notice of tentative decision. The court found that the Parents were aware of what services were being offered to them and what the consequences would be of their failure to make use of those services; and that they had failed or refused to complete the services agreement or comply with the court's orders. It determined that return of the children to the custody of their parents would create a substantial risk of detriment to the physical and emotional well-being of the children; that clear and convincing evidence established that reasonable reunification services had been offered to the Parents; and that there was clear and convincing evidence that the children would not be returned to the custody of their Parents within the next six months. Based on these findings, the court ordered that reunification services cease; that a hearing to select a permanent plan be held within 120 days; that prior to the hearing the Department prepare an assessment and report pursuant to section 366.26, subdivision (b); and that the children remain dependents of the court in their present foster placements. On May 21, 1991, the court issued a ruling determining that any visits or contact by the Parents would be detrimental to the children, and denying their request for visitation.
On June 24, 1991, the court entered judgment pursuant to and incorporating its earlier tentative decision and ruling on visitation. The Parents separately filed notices of appeal from this judgment in case No. A054242. On *1476 May 19, 1992, this court dismissed that appeal on the ground that the orders appealed from were moot and not appealable.
On July 31, 1991, Father filed a motion for appointment of separate counsel for the four children. Thereafter, prior to ruling on the motion, the court met privately with the children. On September 6, 1991, the court granted the motion for separate counsel. In its order, the court stated that it had met with the four children, and that each of them had expressed the desire to be adopted and to continue contact with each other. On October 4, 1991, the parties stipulated and the court ordered that the Department and the childrens' foster parents make reasonable efforts to have the individual children visit one another twice a month.
A contested hearing under section 366.26 was held on October 30, 1991. On November 12, 1991, the court issued a ruling finding all four children adoptable by clear and convincing evidence; terminating the parental rights of both Mother and Father as to Robert, Daniel and Brandy; finding the permanent plan for these three children to be adoption; and ordering that Diana continue to be maintained in long-term foster care at that time, with review in sixty days regarding Diana's adoption.
In its written decision, the court noted that the parents had raised several issues at the hearing, including whether the services offered by the Department were reasonable; whether there was sufficient evidence that further visitation between the Parents and the children would be detrimental; whether there was sufficient evidence to support the finding that there was no substantial probability that the children would be returned to the Parents within six months; and whether there was substantial evidence to support the finding that return of the children to their Parents or further efforts at reunification would create a substantial risk of detriment to the children. The court found that each of these issues had been decided in the earlier tentative decision of May 14, 1991, which it reincorporated in this decision; and that the Parents had presented no evidence to show that conditions had been "changed, rectified or ameliorated so as to show that termination of parental rights would be detrimental to their children."
The Parents filed an amended notice of appeal from the decision of November 12, 1991.

II. ISSUES RAISED IN PRIOR APPEAL ARE UNREVIEWABLE AND MOOT
(1) Both appellant Parents seek to raise a number of issues which they had previously set forth in the briefs in their former, now dismissed, appeal *1477 in case No. A054242. The issues in question are as follows: (1) sufficiency of the evidence to support a finding of risk of detriment to the children; (2) sufficiency of the evidence to support a finding that the children would not be returned within six months; (3) sufficiency of the evidence to support a finding that reunification services were adequate; (4) whether the court's refusal to permit parental visitation rendered the reunification services inadequate; (5) whether the court erred in denying visitation; (6) whether separate counsel should have been appointed for the children; and (7) whether Father was denied effective assistance of counsel because of "irreconcilable differences between appellant [Father] and his appointed counsel" during the first ten months of dependency proceedings.
All of these issues concern the 12-month review and referral hearing under section 366.21, which resulted in the order referring the case for the subsequent section 366.26 hearing on selection and implementation of a permanent plan for the children (the permanency planning hearing). The threshold question before us is whether we may now consider these arguments both Parents seek to incorporate from their previous appeal, or whether those arguments and issues are barred and not appealable.
This question turns on whether orders from a 12-month review and referral hearing under section 366.21 are reviewable in the context of an appeal from a subsequent section 366.26 permanency planning hearing, where no petition for extraordinary writ was filed from the decisions made at the earlier review and referral hearing. Recent cases have uniformly held that any review of an order terminating reunification services and determining that a child cannot be returned to a parent must be undertaken by writ petition, and if not so brought will be deemed waived. (In re Arturo A. (1992) 8 Cal. App.4th 229, 234-237 [10 Cal. Rptr.2d 131]; In re Amanda B. (1992) 3 Cal. App.4th 935, 941 [4 Cal. Rptr.2d 922]; In re Amber U. (1992) 3 Cal. App.4th 871, 879-881 [4 Cal. Rptr.2d 726]; In re Cory M. (1992) 2 Cal. App.4th 935, 945-947 [3 Cal. Rptr. 2d 627]; In re Taya C. (1991) 2 Cal. App.4th 1, 6-9 [2 Cal. Rptr.2d 810].) (2) (See fn. 2.) These cases have relied on the language of section 366.26, subdivision (k), which provides that an order for a permanency planning hearing pursuant to that section is not an appealable order, but may be subject to review by extraordinary writ.[2]
We find this analysis persuasive. In view of the importance of expediting the process whereby minors are placed in a permanent home and minimizing *1478 the uncertainties occasioned by delay (In re Amanda B., supra, 3 Cal. App.4th at pp. 939-940), we conclude that the findings made in the May 14, 1991, tentative decision following the section 366.21 review and referral hearing, which were incorporated in the judgment of June 24, 1991, and subsequently formed the basis of the termination ruling of November 12, 1991, following the section 366.26 permanency planning hearing, have become res judicata. Specifically, appellants are now precluded from raising the following issues on this appeal from the termination order: sufficiency of the evidence to support the findings of risk of detriment from continuing the Parents' control over the children; sufficiency of the evidence to support the finding that the children would not be returned within six months; whether adequate reasonable reunification services had been provided to the Parents; whether visitation was properly denied; and whether separate counsel should have been appointed for the children.

III. FATHER'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL
(3) As in his previous appeal, now dismissed, appellant Father also argues that he was denied effective assistance of counsel because of "irreconcilable differences between [himself] and his appointed counsel" during the first 10 months of dependency proceedings. This issue is arguably moot and not appealable, because it arose in the context of the earlier section 366.21 hearing, and should have been presented on extraordinary writ prior to the section 366.26 permanency planning hearing. (In re Amanda B., supra, 3 Cal. App.4th at pp. 938-942.)
Assuming that this particular issue is appealable on constitutional grounds (see Lassiter v. Department of Social Services (1981) 452 U.S. 18, 24-31 [68 L.Ed.2d 640, 647-650, 101 S.Ct. 2153]), however, it is without merit. *1479 Applying the standard test for a claim of ineffective assistance of counsel, Father must demonstrate both that: (1) his appointed counsel failed to act in a manner expected of reasonably competent attorneys acting as diligent advocates; and that (2) this failure made a determinative difference in the outcome, rendering the proceedings fundamentally unfair in that it is reasonably probable that but for such failure, a determination more favorable for Father's interests would have resulted. (In re James S. (1991) 227 Cal. App.3d 930, 936 [278 Cal. Rptr. 295].)
Father has failed to establish that he was denied effective assistance of counsel. Aside from broad, conclusory allegations in his appellate brief to the effect that his own hostility, belligerence and lack of cooperation during the first 10 months of dependency proceedings were the result of "irreconcilable differences" between him and his first attorney, the record contains no evidence that Father's original appointed counsel (Mr. Watson) failed to act in the manner expected of competent attorneys acting as diligent advocates. The fact that some years prior to this case Attorney Watson, serving as a public defender, had represented a man charged with sexually assaulting one of Father's children, does not automatically place on him the ethical or professional duty to refuse to represent Father and remove himself from the dependency proceedings. Appellant Father has not cited any authority to this effect, and there is nothing in the record whatsoever to support the conclusion that Attorney Watson's conduct was unethical or unprofessional in any manner.
Moreover, it is not reasonably probable that a determination more favorable to appellant Father would have resulted but for Attorney Watson's failure to remove himself from the case. Father's contention that his uncooperativeness and belligerence were entirely attributable to his poor relationship with Attorney Watson is completely belied by the record. Father's hostility and negativity were well established before Mr. Watson was appointed to represent him; the record is replete with evidence of Father's hostility and threatening attitude toward Department employees, social workers, child abuse reporters, school employees, and peace officers, among others. Professional evaluations of Father in the record support the conclusion that his antisocial behavior was deeply ingrained long before he had any problems with Mr. Watson's representation.
Father's cooperativeness with the Department, the court, and the services agreement fluctuated throughout the entire period of these proceedings. In fact, his attitude was not consistently bad during the time Watson was representing him; it actually improved for a time around May 1990, leading the court to vacate the earlier restraining order and permit unsupervised *1480 visitation in June 1990. Subsequently, Father's behavior deteriorated again, prompting the court to bar visitation altogether.
After the court granted the request for substitution of counsel in October 1990, Father's attitude and behavior did not significantly change from before. Although he started some individual counseling and submitted to drug and alcohol evaluation, he refused to submit to any of the recommendations arising from these services. He refused to acknowledge that he had any problem with alcohol; he refused to attend parenting classes; he denied battering either his wife or his children; he refused to acknowledge that corporal punishment was wrong; and he continued to blame his refusal to comply with the court's orders and the services agreement on his anger with "the system." Indeed, Father continued to manifest an uncooperative attitude and failed to comply with any provisions of the services agreement, despite his own admission that his first appointed counsel, Watson, actually did nothing to prevent him from doing so.
In short, the record does not support appellant Father's contention that, but for his first attorney's failure to disqualify himself before October 1990, a different and more favorable result would have been obtained in this case.

IV. EVIDENCE OF CHILDREN'S WISHES
(4a) The Parents contend that the children's own views regarding termination and adoption were not presented at the section 366.26 permanency planning hearing, and were not considered by the court. We disagree.
(5) Section 366.26, subdivision (g) provides: "at all termination proceedings, the court shall consider the wishes of the child and shall act in the best interest of the child." (Italics added.) We interpret this statute to require the juvenile court to receive direct evidence of the children's wishes regarding termination and adoption at the permanency planning hearing. This evidence may take the form of direct formal testimony in court; informal direct communication with the court in chambers, on or off the record; reports prepared for the hearing; letters; telephone calls to the court; or electronic recordings. Although a child's presence in court is not required, an out-of-court statement, as in a report or other form, must reflect the fact that the child is aware that the proceeding involves the termination of parental rights.
(4b) The record clearly supports the conclusion that this requirement was met in this case. The children's opinions and views on their status and the possible outcome of the permanency planning process were reflected as *1481 follows: the acknowledgment by Mother's own attorney that the children "have said they want to be adopted"; the trial court's statements that it had interviewed and talked to the children "several times" and that it understood that all four of them wanted to be adopted; the statements of the children's respective attorneys; the sworn testimony of the children's therapist; and the reports and sworn testimony of Department social workers, based on interviews with the children themselves. These materials were all admissible as competent evidence for the truth of the matters asserted, because the persons who prepared the reports were available for cross-examination. (In re Malinda S. (1990) 51 Cal.3d 368, 375-382 [272 Cal. Rptr. 787, 795 P.2d 1244].)
We conclude that the trial court received direct evidence of the children's wishes at the time of the termination hearing, and that it was fully aware of their desires with regard to termination and adoption.

V. ADOPTABILITY ASSESSMENT OF FOSTER PARENTS
(6) Appellant Mother asserts that the Department failed to prepare an adequate assessment of the eligibility and commitment of the prospective adoptive parents under section 366.21, subdivision (i). That provision states that the preliminary adoption assessment report must include "[a] preliminary assessment of the eligibility and commitment of any identified prospective adoptive parent or guardian, particularly the caretaker, to include a social history including screening for criminal records and prior referrals for child abuse or neglect, the capability to meet the minor's needs, and the understanding of the legal and financial rights and responsibilities of adoption and guardianship." (§ 366.21, subd. (i)(4).)
In our opinion, the assessment in this case was in substantial compliance with the statutory requirements. The record shows that the three prospective adoptive families were all licensed as foster homes under the California Community Care Facilities Act (Health & Saf. Code, § 1500 et seq.), with longstanding and continuing relationships with the Department. Under this act, each of these prospective adoptive families had already been required, on a continuing basis, to submit to the Department evidence of "reputable and responsible character"; "criminal record clearance," including any record of criminality more serious than a "minor traffic violation"; employment history; character references; adequate financial resources sufficient to maintain statutory standards; and an "ability, readiness, and willingness ... to meet the varying needs of a child." (Health & Saf. Code, §§ 1520, subds. (b), (c), 1521.5, subd. (a), 1522, subd. (d), 1525.1.) Each of the families was fully reevaluated for purposes of the section 366.26 hearing by adoption and permanency planning caseworkers. Moreover, the proceeding being appealed here was merely the preliminary step to adoption, in which parental rights *1482 were terminated and a permanent plan established. Only after this section 366.26 hearing are the children referred to the appropriate adoption agency for entertaining a petition for adoption. (§ 366.26, subd. (i).) Under the ensuing adoption process, the prospective families must undergo additional evaluations, which would cure any potential error in the preliminary assessments at issue here. Thus, any possible error was harmless.[3]

VI. ALLEGED ERRONEOUS RULINGS RELATING TO DIANA G.
(7) Appellant Mother contends that the court erred both in failing to provide for visitation between Diana G. and herself, and in finding that Diana was adoptable. We disagree.
In the first place, the rulings regarding Diana were not final at the time this appeal was filed. The court specifically stated in its order that it was reserving ruling on permanent planning for Diana for another 60 days, in order for her foster family to come to some decisions about adopting her. In such an instance, review by extraordinary writ is required; not only would the delay occasioned by an appeal hold the children's status in limbo, but the order itself cannot be said to be final and appealable. (Cal. Rules of Court, rules 39(a), (b) & 39.1(a); In re Amanda B., supra, 3 Cal. App.4th at pp. 938-942; In re Taya C., supra, 2 Cal. App.4th at pp. 7-9; In re Melvin S. (1976) 59 Cal. App.3d 898, 900 [130 Cal. Rptr. 844].) To permit an appeal of an order set for review only 60 days later would create a situation in which judicial review would not take place until long after the order had been reconsidered and possibly mooted by the lower court.
(8) Moreover, Mother's claim is substantively meritless. There is clearly substantial evidence in the record to support the conclusion that Diana is adoptable. This evidence is contained in the assessments and reports by the various Department employees and caseworkers who evaluated Diana's situation and her potential foster parents, who were specifically identified and appeared prepared for adoption. (In re Jennilee T. (1992) 3 Cal. App.4th 212, 224 [4 Cal. Rptr.2d 101].) Because the court concluded that adoption of Diana and termination of parental rights with regard to her was in her best interests, it was not required to make a finding or order for visitation. (§ 366.26, subds. (c)(3), (4).)
*1483 In any event, since this appeal was filed, the court has terminated the Parents' rights with regard to Diana and freed her for adoption.[4] The claim regarding visitation is now moot. (In re Audrey D. (1979) 100 Cal. App.3d 34, 39, fn. 4 [160 Cal. Rptr. 802].)
The orders appealed from are affirmed.
Chin, J., and Werdegar, J., concurred.
NOTES
[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.
[2] "The issue is squarely presented: May a parent seek review of errors made in a referral hearing after the issuance of a judgment in the subsequent selection and implementation hearing? The answer to this question lies in a review of the statutory framework for resolving the disposition of dependent children, as applicable from and after January 1, 1989. The procedure for terminating parental rights is set forth in section 366.26, subdivision (c)(1). If the court determines by clear and convincing evidence that it is likely the child will be adopted, the findings made at the previous referral hearing `shall then constitute a sufficient basis for termination of parental rights....' In other words, the court is instructed to accept the findings made at the previous hearing without reopening the case as to those matters. These previous findings have become res judicata.

".... .... .... .... .... .... ....
"The compelling conclusion from [a] review of [the] statutory framework and objectives is that objections to the rulings made at a referral hearing must be raised by writ petition before the time of the selection and implementation hearing. If not so raised, they become moot. It would be entirely contrary to the ends sought by the statute to permit a challenge to the referral hearing determinations after selection and implementation rulings had been made. Since the selection and implementation ruling, at least if it terminates parental custody, is grounded on acceptance of the referral hearing determinations, the reliability of the selection and implementation decision would be completely destroyed if parents were able to mount late challenges to the earlier foundational rulings." (In re Amanda B., supra, 3 Cal. App.4th at pp. 939-940.)
[3] The only case cited by appellant Mother in support of her position which has not been depublished by order of the Supreme Court is itself clearly distinguishable, since it concerns the appointment of a guardian. Guardianship does not involve the kind of licensing procedure required for foster parents; once a guardian is appointed, there is little or no continuing court supervision. (In re Lisa D. (1991) 227 Cal. App.3d 613 [277 Cal. Rptr. 918].)
[4] Pursuant to Evidence Code section 452, subdivision (d), Code of Civil Procedure section 909 and California Rules of Court, rule 23, we take judicial notice of the order of May 20, 1992, terminating both appellants' parental rights with regard to Diana G. We also take judicial notice of the complete file in appeal No. A054242.