51 Cal.App.4th 1074 (1996)
In re MICHAEL D., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES et al., Plaintiffs and Appellants,
v.
OSHIA D., Defendant and Respondent.
Docket No. B094478.
Court of Appeals of California, Second District, Division Seven.
December 19, 1996.
*1077 COUNSEL
De Witt Clinton, County Counsel, Sterling Honea, Principal Deputy County Counsel, Auxiliary Legal Services, Victor Greenberg, Webster & Bayliss and Barbara Bayliss for Plaintiffs and Appellants.
Donna L. Groman, under appointment by the Court of Appeal, for Defendant and Respondent.
Robert R. Walmsley, under appointment by the Court of Appeal, for Minor.
OPINION
JOHNSON, J.
The Los Angeles County Department of Children and Family Services and a minor's legal guardian appeal from an order granting *1078 the mother's petition to modify the permanent placement plan and terminate legal guardianship. The primary issue raised in this appeal is whether the mother, as the party bringing the petition, must prove detriment to the minor by clear and convincing evidence before the juvenile court may grant a petition to regain custody and remove the minor from the legal guardian's home. We hold the parent's burden of proof is to show by a preponderance of the evidence there is new evidence or change of circumstance which makes a change of placement, including termination of legal guardianship, in the best interests of the minor. Accordingly, we affirm the trial court's order granting the mother's petition to modify the permanent plan for legal guardianship and to terminate the legal guardianship without a showing of detriment to the child.

FACTS AND PROCEEDINGS BELOW
Michael was born on January 29, 1990, several months after his biological father was killed in a car accident.
On August 25, 1992, the Los Angeles County Department of Children and Family Services (DCFS) filed a petition to establish the jurisdiction of the juvenile court over Michael under Welfare and Institutions Code section 300, subdivisions (b) and (c).[1] The petition alleged Michael had suffered inappropriate discipline at the hands of his mother's boyfriend and that the mother had failed to protect him. The petition also alleged the mother and her boyfriend had a history of substance abuse.
At the detention hearing the juvenile court found DCFS had made a prima facie showing Michael was a person described in section 300, subdivisions (b) and (c) and ordered him placed with his paternal great-grandmother.
In December 1992, Michael visited with his paternal grandparents, Lynn and Roy D., in Calaveras County in Northern California. In January 1993, Lynn D. informed DCFS she wanted extended contact with Michael and requested custody if possible. The juvenile court ordered reunification services for the mother and ordered her to complete counseling and attend a parenting course and a drug abuse program. The juvenile court ordered liberal visitation by the mother. The court also directed the boyfriend to have no contact with Michael.
In March 1993, the juvenile court found Michael's paternal grandparents' home was a suitable placement and he began to live with his paternal grandmother, appellant Lynn D., in Calaveras County.
*1079 Over the months the mother regularly expressed interest in regaining custody of Michael. However, according to a report dated June 1993, the mother had failed to comply with court orders for parenting classes and drug counseling. The mother was still living with her boyfriend and at the time was pregnant with his child. The same report indicated Michael was flourishing in his paternal grandparents' home, but he became disturbed by his mother's infrequent visits.
In January 1994, DCFS recommended adoption as a permanent plan for Michael. The mother objected to adoption. She had just given birth to a son. She claimed she wanted to regain custody of Michael but at that time was not prepared to have Michael live with her. She still had not completed the parenting classes and drug counseling program.
Michael, on the other hand, was doing well with his grandparents. DCFS continued to advocate a permanent plan of adoption for Michael. His paternal grandmother stated she would continue to provide a home for Michael until his mother "straighten[ed] up her act." However, the grandmother stated she would prefer legal guardianship as a permanent plan over adoption to allow the mother to regain custody of Michael in the future.
DCFS noticed a section 366.26 hearing for May 1994 to terminate the mother's parental rights and to implement a plan for adoption. Michael's paternal grandparents had since grown attached to Michael and decided they preferred to adopt him. The hearing was continued to July 1994.
In June 1994, the mother filed a petition for modification. In her petition the mother alleged a change of circumstances and sought custody of Michael. Her petition alleged she had a five-month-old son who was born drug free and was not detained by DCFS. Her petition for modification alleged she maintained regular contacts with Michael, she was actively participating in parenting classes, drug counseling and testing and had acquired suitable housing. The juvenile court found the petition stated a prima facie case for modification and scheduled the matter to be heard in conjunction with the section 366.26 hearing on July 15, 1994. This hearing date was continued to August 18, 1994.
Prior to the hearing on August 18, 1994, counsel for all parties agreed to recommend legal guardianship by the paternal grandmother, Lynn D., rather than adoption. The parties apparently further agreed to recommend continuing juvenile court jurisdiction in order to implement a plan designed to reintegrate Michael and his mother during the guardianship. The juvenile court issued letters of guardianship to Lynn D. on that date.
*1080 In a November 1994 review of the permanent plan, the juvenile court continued prior visitation orders and gave discretion to DCFS to liberalize visitation by the mother. The court also ordered a supplemental report on a plan for reunification.
At the permanent plan review hearing February 1995, the mother contested DCFS's recommendation juvenile court jurisdiction be terminated. Prior to the hearing on March 31, 1995, the mother filed a petition to modify the permanent plan and to terminate legal guardianship. The juvenile court granted a hearing on the mother's petitions.
Hearings on the petitions began in June 1995 and continued sporadically over several weeks. The mother testified she had broken off her relationship with the boyfriend who had physically abused Michael. She had completed parenting classes and drug counselling and testing. The mother testified the parenting classes had proved useful in helping her to raise and care for her infant son. At the time of the hearing the mother had been drug free for over two years. During this time she was in a relationship with a career naval signalman whom she planned to marry in July 1995. She and her young son lived with her fiance in housing on the naval base. Her social worker had visited the home and found the accommodations and atmosphere comfortable and nurturing. Because the juvenile court had allowed an extended visit with his mother prior to the hearing, Michael had had an opportunity to get to know and love his young brother. The mother testified everyone got along well.
Michael was five and a half years old at the time of the hearings. He testified he wanted to live with his mother but wanted to still be able to visit his grandmother.
Counsel for Michael urged the court to find it was in Michael's best interest to live with his mother. Counsel for the legal guardian and DCFS did not seriously dispute the fact the mother had rehabilitated herself and the circumstances now warranted a finding it was in Michael's best interests to live with her. Instead, counsel for DCFS argued the hearing should have been transferred to Calaveras County where the legal guardian resided. In addition, DCFS argued the petition for termination of legal guardianship could not be granted absent a showing of detriment to the child inflicted by the legal guardian.
The juvenile court found the mother had carried her burden of proving changed circumstances. The court also found there was clear and convincing evidence it was in Michael's best interest to be returned to the home and care *1081 of his mother. The juvenile court acknowledged Michael's grandmother had been an excellent legal guardian and caregiver and clearly loved Michael very much. However, the juvenile court found Michael's repeated comments he wanted to be with his mother represented very strong evidence that allowing the mother to regain custody was in his best interest. Accordingly, the juvenile court granted the mother's petitions to modify the permanent plan and to terminate legal guardianship.
DCFS and the legal guardian, Lynn D., (appellants) appeal from the juvenile court's order.[2]

DISCUSSION

I. A Petition for Modification of a Juvenile Court Order Brought by a Minor's Parent May Be Granted Based on Changed Circumstances and Evidence Establishing by a Preponderance of the Evidence Modification of the Court's Order Would Be in the Best Interest of the Dependent Child.

(1a) Appellants claim termination of legal guardianship is not authorized unless a party complies with section 361, subdivision (b) and California Rules of Court, rule 1432(f). Therefore, they argue the juvenile court's order was erroneous because the mother failed to prove by clear and convincing evidence the child suffered detriment at the hands of the legal guardian, the prerequisite showing for removal of a minor from the home of a parent or legal guardian under these provisions.[3] We conclude appellants' proposed standard for modification of an initial permanent placement plan in a situation where the juvenile court has expressly retained jurisdiction to determine *1082 whether the child can successfully be reunited with his parent is erroneous. We also conclude appellants' argument is contrary to decisions of our Supreme Court construing the procedures for granting petitions for modification.
Section 300 empowers the juvenile court to adjudge as a dependent child of the court any minor who comes within the descriptions set forth in the statute, which include a substantial risk the child will suffer physical harm either by the parent, or as a result of the parent's failure to protect or supervise the child. (§ 300, subds. (a) and (b).) (2) "A section 300 dependency hearing is bifurcated to address two distinct issues. First, at the jurisdictional hearing, the court determines whether the child falls within any of the categories set forth in section 300. If so, the court may declare the minor a dependent child of the court. [Citation.] Then, at the dispositional hearing, the court must decide where the child will live while under its supervision, with the paramount concern being the child's best interest. [Citation.]" (In re Corey A. (1991) 227 Cal. App.3d 339, 346 [277 Cal. Rptr. 782], fn. omitted.)
(3) Section 361 specifies the circumstances which constitute grounds for removal of a child from his or her home. Subdivision (b) of section 361 provides: "No dependent child shall be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated unless the juvenile court finds clear and convincing evidence of any of the following [detrimental circumstances]." (Italics added.)
*1083 If the governmental agency recommends removal of the child from the home of his parent or guardian, the government must prove the detrimental circumstances exist by clear and convincing evidence. In interpreting section 361, subdivision (b) our Supreme Court explained "[a]t the dispositional hearing, the burden is on the state to prove, by clear and convincing evidence, that removal of the child from the parent's custody is necessary." (In re Marilyn H. (1993) 5 Cal.4th 295, 308 [19 Cal. Rptr.2d 544, 851 P.2d 826].)
For the next (maximum) 18 months, the emphasis is on efforts to reunite the family. At the dispositional hearing, and at each review hearing prior to permanency planning, there is a statutory presumption the child will be returned to parental custody. (In re Marilyn H., supra, 5 Cal.4th 295, 308.) However, once reunification services have ended and termination of parental rights is contemplated, the focus shifts from the interests of the family to the needs of the child for permanency and stability. Thereafter, the burden is on the parent to prove changed circumstances pursuant to section 388 to revive the reunification issue. (In re Marilyn H., supra, 5 Cal.4th at p. 309.)
Section 388 provides: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court or the child himself through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court or in which a guardianship was ordered pursuant to Section 360 for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court....
"If it appears that the best interests of the child may be promoted by the proposed change of order or termination of jurisdiction, the court shall order that a hearing be held...."
(4) Petitions to change, modify or set aside a juvenile court order are liberally construed in favor of granting a hearing to consider the parent's request. (In re Marilyn H., supra, 5 Cal.4th at p. 309.) The parent need only make a prima facie showing to trigger the right to a full hearing on the petition. (In re Marilyn H., supra, 5 Cal.4th at p. 310.)
The person who files a petition to change, modify or set aside a juvenile court order bears the burden of proof by a preponderance of the evidence the proposed change is in the best interest of the child. In construing the language of section 388, our Supreme Court has expressly stated "[a]t a hearing on a motion for change of placement, the burden of proof is on the *1084 moving party to show by a preponderance of the evidence that there is new evidence or that there are changed circumstances that make a change of placement in the best interest of the child. (§ 388; In re Audrey D. (1979) 100 Cal. App.3d 34, 45 [160 Cal. Rptr. 802]; Cal. Rules of Court, rule 1432(f).)" (In re Stephanie M. (1994) 7 Cal.4th 295, 317 [27 Cal. Rptr.2d 595, 867 P.2d 706], italics added.) The court in In re Stephanie M. did not specify a different level of proof for changes of placement which result in removing the dependent child from his legal guardian's home in order to reunite him with his parent.
(1b) Appellants suggest the language of California Rules of Court, rule 1432(f) may nevertheless require clear and convincing evidence of detriment before a child may be removed from the home of his legal guardian. Rule 1432 is entitled "Petition for Modification" and outlines procedures to implement section 388. Rule 1432(f) provides:
"The party requesting the modification under section 388 shall have the burden of proof. If the request is for the removal of the child from the child's home, the party must show by clear and convincing evidence that the grounds for removal in section 361(b) exist.... All other requests require a preponderance of the evidence to show that the child's welfare requires such a modification.
"... The hearing on a request for removal from the home of the parent or guardian, ... shall be conducted as a disposition hearing under rules 1455 and 1456." (Italics added.)[4]
Because the language of the rule does not differentiate between a governmental "party" and a private "party" requesting modification, appellants argue the mother's petition should not have been granted because she failed to prove any detriment to the child in order to remove him from the custody of his legal guardian.
(5) First we note rules of court are supposed to assist in interpreting and implementing the legislative scheme for dependent minors. In cases of conflict or ambiguity the statutory language, and Supreme Court decisions interpreting those statutes, must control over the rules. (See, e.g., Sadler v. Turner (1986) 186 Cal. App.3d 245, 250 [230 Cal. Rptr. 561].) Second, "[o]ne section of the dependency law may not be considered in a vacuum. It must be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect. [Citations.]" (In re Marilyn H., supra, 5 Cal.4th at p. 307.)
*1085 (1c) As DCFS acknowledged below, only governmental agencies petition the juvenile court for a dispositional hearing in order to detain a minor. When the government intervenes and petitions to remove a child from his or her home, the government must prove the requisite detrimental conditions by clear and convincing evidence. (§ 361, subd. (b).) If the child's exclusive residence is in the home of his or her legal guardian at the time the initial section 300 petition is filed, then again the government is required to prove the child would suffer detriment by clear and convincing evidence if permitted to remain in the legal guardian's home. (§ 361, subd. (b); see In re Alicia O. (1995) 33 Cal. App.4th 176, 183 [39 Cal. Rptr.2d 119].)[5]
When the governmental agency petitions the juvenile court to modify, change or set aside an earlier order (for example an order permitting the child to stay in the home or in a less supervised or restrictive placement) by requesting the child be removed from his or her family home, the state is again interjecting itself into private matters. By parity of reasoning, the government should again be required to supply clear and convincing evidence of detriment to the child before a juvenile court is warranted in granting the government's petition to remove the child from his or her home.[6] (§ 388; Cal. Rules of Court, rules 1432(f), 1455, 1456; cf. In re Jasmon O. (1994) 8 Cal.4th 398, 415 [33 Cal. Rptr.2d 85, 878 P.2d 1297] [government need only prove by preponderance of the evidence plan to gradually transfer custody to natural father was detrimental to the child and should be set aside].) Indeed California Rules of Court, rule 1432(f) specifies if the request for modification or change of placement is for removal of the child from the child's home the hearing must be conducted as a dispositional hearing. (Cal. Rules of Court, rules 1432(f), 1455, 1456.) As noted, at a dispositional hearing the government has the burden of proving detriment to the child by clear and convincing evidence. (In re Marilyn H., supra, 5 Cal.4th 295, 308.)
*1086 At the dispositional hearing, and at each review hearing prior to permanency planning, there is a statutory presumption the child will be returned to parental custody. (In re Marilyn H., supra, 5 Cal.4th 295, 308.) The presumption ceases once reunification services have terminated. At that point it is presumed continued care is in the best interest of the child. However, the presumption may be rebutted by the parent showing circumstances have changed which would warrant further consideration of reunification. (In re Marilyn H., supra, 5 Cal.4th 295, 310.) As noted, when a parent petitions the court for modification of placement based on changed circumstances, the parent need only prove a change of placement is in the best interest of the child by a preponderance of the evidence. (In re Stephanie M., supra, 7 Cal.4th at p. 317.)[7]
Thus, the thrust of the legislative scheme is to encourage parents to correct earlier problems so as to reunite them with their children. (See In re Melissa S. (1986) 179 Cal. App.3d 1046, 1059 [225 Cal. Rptr. 195] [this state has a well-recognized interest in preserving the family unit].) This intent would be thwarted if parents lost all ability to regain custody of their dependent minors, despite rehabilitation and despite having corrected earlier problems, if parents whose rights had not been terminated could only regain custody by proving the minors suffered harm in their current living situation. This would be contrary to the legislative goals, public policy and common sense. The Legislature has provided the "escape mechanism" through section 388 to allow juvenile courts to consider new information, and grant petitions for modification where the parent proves by a preponderance of the evidence a change in placement to the parent's home is in the best interest of the child. (In re Marilyn H., supra, 5 Cal.4th 295, 309; In re Stephanie M., supra, 7 Cal.4th at p. 317; cf. San Diego County Dept. of Social Services v. Superior Court (1996) 13 Cal.4th 882, 888 [55 Cal. Rptr.2d 396, 919 P.2d 1329] [when reunification with the parents is not possible, juvenile courts operate under a mandatory presumption in favor of adoption over legal guardianship over foster care].)
In sum, we hold a parent's burden of proof to modify a permanent placement plan is by a preponderance of the evidence to prove both changed circumstances and that the best interest of the child would be a change in placement to the parent's home. Consequently, we further hold when a parent satisfies his or her burden of proof, a juvenile court acts within its *1087 discretion in granting a petition for modification even though the change in placement results in termination of a legal guardianship conditionally established while the child was a dependent of the juvenile court.[8] (See In re Teneka W. (1995) 37 Cal. App.4th 721, 728 [43 Cal. Rptr.2d 666] [a guardianship is not irrevocable and thus falls short of the secure and permanent placement intended by the Legislature].)[9]

II. Substantial Evidence Supports the Finding It Was in Michael's Best Interest for His Mother to Regain Custody.

(6a) Appellants next contend there was insufficient evidence to support the juvenile court's determination termination of legal guardianship was in Michael's best interest. Consequently, they allege the court abused its discretion in granting the mother's petition to regain custody.
(7) "This determination was committed to the sound discretion of the juvenile court, and the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established.... As one court has stated, when a court has made a custody determination in a dependency proceeding, `"a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination."'" (In re Stephanie M., supra, 7 Cal.4th at p. 318, citations omitted.)
(6b) The record on appeal contains ample uncontradicted evidence establishing it was in Michael's best interest for his mother to regain custody. Consequently, we conclude the juvenile court's custody determination was not an abuse of discretion.
Appellants argue a child's wishes are not determinative of his or her best interests. (See, e.g., In re Melissa S., supra, 179 Cal. App.3d 1046, 1058 [the preference of a minor child is not determinative of his or her best interests].) We agree. However, we also agree with the juvenile court that Michael's testimony and repeated spontaneous statements he "wanted to live with Mommy" constituted powerful demonstrative evidence it would be in his best interest to allow him to do so.
*1088 Michael was the first witness to testify during the extended hearings. At the time he was five and a half years old. On direct and cross-examination he repeatedly asserted he wanted to live with his mother, but also wanted to be able to visit with his grandmother. He testified he enjoyed his visits with his mother. He stated he had a little brother named Bryce who lived with "Mommy." Michael testified he and Bryce wanted to visit with his grandmother. Michael stated he decided a long time ago he wanted to live with his "Mommy." He said, "The best place is for me to visit with my grandma and live with my mom. We can visit my grandma for the weekend."
Michael's mother testified she ended her relationship with her abusive boyfriend. After that she got off drugs and started parenting classes and drug counseling and testing. She testified she learned a lot from the parenting classes and was using her new knowledge in raising her infant son. She was now in a stable and nurturing relationship with a career naval signalman whom she planned to marry later that month. The mother testified she loved her visits with Michael and especially enjoyed the extended visit the court authorized during the hearings.
The next day at the close of the hearing Michael's grandmother and legal guardian, Lynn D., requested to have Michael spend the evening with her. In response Michael spontaneously cried out he wanted to be with his "Mommy." Michael started crying and his counsel asked him what was the matter. Michael stated he wanted to go home with his mother.
Appellants did not present any evidence tending to indicate living with his mother would be contrary to Michael's best interest.
At the conclusion of the evidence and argument the juvenile court found no evidence of risk to Michael from living in either home. The court concluded it was "clearly and convincingly in Michael's best interest to be with his mother." The court based its ruling on its observations of Michael's behavior during the hearings and found it "absolutely consistent with his testimony the first day of this hearing several weeks ago."
Based on the uncontradicted evidence and Michael's clear and consistent preference for living with his mother, we conclude substantial evidence supports the juvenile court's finding it was in Michael's best interest to be returned to his mother's custody. (In re Stephanie M., supra, 7 Cal.4th at p. 318.)

*1089 DISPOSITION
The judgment is affirmed. The parties shall bear their own costs of appeal.
Lillie, P.J., and Woods, J., concurred.
Appellants' petition for review by the Supreme Court was denied March 12, 1997.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code.
[2] While the matter was pending on appeal the DCFS did not oppose juvenile court orders permitting Michael to continue to reside with his mother. For this reason the mother moved to dismiss the appeal as moot. However, this is an inadequate basis for us to order dismissal of this appeal.

"Although as a general rule, an appeal presenting only abstract or academic questions should be dismissed as moot [citation], the appeal is not moot nor subject to dismissal if the question to be decided is of general public interest [citation]; or if there is a likelihood of recurrence of the controversy between the same parties or others; or if there remain material questions for the court's determination. [Citations.]" (Grier v. Alameda-Contra Costa Transit Dist. (1976) 55 Cal. App.3d 325, 330 [127 Cal. Rptr. 525].)
Based on these considerations we denied the mother's motion to dismiss this appeal as moot. The juvenile court continues to retain jurisdiction of the matter. Consequently, resolution of the issue raised in this appeal is particularly appropriate because it is likely to affect the future rights of the parties. (See, e.g., In re Marriage of Abernethy (1992) 5 Cal. App.4th 1193, 1197 [7 Cal. Rptr.2d 342].) Moreover, the question to be decided is of general public interest affecting parties beyond those in the present litigation. (See, e.g., Finnie v. Town of Tiburon (1988) 199 Cal. App.3d 1, 10 [244 Cal. Rptr. 581].)
[3] The minor proposes an alternative analysis. He suggests whether proof of detriment by clear and convincing evidence is required should depend on the definition of what constitutes the child's "permanent home." He lists several criteria to assist in defining the term "permanent home," such as where the child goes to school, where the child's doctors are located, the location of the minor's personal possessions, or which location the child considers "home."

We reject the minor's proposal as unworkable as evidenced by his own analysis of the facts in the case at bar. We also find minor's argument in direct conflict with the statutory scheme permitting parents whose parental rights have not been terminated to regain custody of their children if they prove by a preponderance of the evidence regaining custody would be in the best interests of the child. (See, e.g., § 366.3 [on review of long-term foster care or on termination or revocation of a legal guardianship]; see also Cal. Rules of Court, rule 1466.)
For example, under the minor's analysis, the "permanent home" of a child placed in foster care would be the home of the foster parents. The child would attend school near the foster parents' home. The child's physicians or psychologist(s) would also presumably be located in the vicinity of the foster parents' home. However, under the Welfare and Institutions Code and the rules of court interpreting those statutes, parents whose parental rights have not been terminated may regain custody if they prove by a preponderance of the evidence reunification efforts would be in the best interests of the child. Under the minor's proposal the parents in this situation could not regain custody unless they proved detriment to the child from the foster care arrangement by clear and convincing evidence. We reject the minor's proposal as potentially destructive of parents' ability to regain custody of their dependent children, as well as contrary to the language of the applicable statutes permitting parents whose parental right have not been terminated to prove by a preponderance of the evidence reunification efforts would be in the best interest of the child.
[4] Petitions for modification and for termination of legal guardianship are both subject to the procedures outlined in California Rules of Court, rule 1432. (See Cal. Rules of Court, rule 1466(c).)
[5] At oral argument counsel for the minor argued in favor of a rule which would require clear and convincing evidence of detriment to the child before anyone  including a parent  could successfully petition the juvenile court for an order to change a permanent placement plan and remove the child from the home designated under the permanent plan. Nevertheless, minor's counsel urged this court to uphold the juvenile court's order and permit the mother to retain custody of Michael. Counsel noted that at this point Michael had been living with his mother for more than a year and it was in his best interest to permit him to remain.

DCFS urged this court to reverse the judgment based on the juvenile court's use of an allegedly erroneous legal standard. However, DCFS, by contrast, refused to take a position on the proper disposition of this appeal and refused to state the relief it seeks in this appeal is to reverse the juvenile court's decision placing Michael in his mother's custody.
[6] The language of California Rules of Court, rule 1401(a)(13) supports this conclusion. The rule defines the term "removal" as "a court order that takes away the care, custody, and control of a dependent child or ward from the child's parent or guardian, and places the care, custody, and control of the child with the court, under the supervision of the agency responsible for the administration of child welfare or the county probation department[.]"
[7] In the analogous context of review of a permanent plan of foster care, or when a legal guardianship has been terminated or revoked, if parental rights have not been terminated parents need prove only by a preponderance of the evidence reunification efforts would be the best alternative for the child. (See § 366.3, subd. (b); Cal. Rules of Court, rule 1466(b) and (c)(4).)
[8] In view of our conclusion, we need not reach mother's and minor's alternative argument appellants are estopped from opposing Michael's return to parental custody by virtue of their stipulation to a compromise plan of legal guardianship during the period the mother pursued reunification efforts to reintegrate Michael into her life.
[9] We agree with the trial court this disposition renders moot DCFS's request to transfer venue to Calaveras County where the person having custody of the minor resides. (§ 375.)