[No. B197375. Second Dist., Div. Seven. Dec. 5, 2007.]

In re JACOB P., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
MICHELLE P., Defendant and Appellant.

**COUNSEL**

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Konrad S. Lee, under appointment by the Court of Appeal, for Minor.

**OPINION**

**WOODS, J.**—Michelle P., the mother of twins Jacob and Jeremy, appeals from the order finding it was not in Jacob's best interest to be returned to appellant's custody. After appellant's reunification services had been terminated and a permanent plan of guardianship had been ordered for the twins, appellant filed a Welfare and Institutions section[1] 388 petition requesting termination of the guardianship and return of the twins to her custody and additional reunification services. The juvenile court granted the petition in part and ordered the Los Angeles County Department of Children and Family Services (Department) to provide the services. After Michelle completed the services, the court returned Jeremy to appellant's custody. However, Jacob requested a contested hearing at which the court applied the best interest test and found it was not in Jacob's best interest to terminate his guardianship. Michelle contends the court applied the wrong test as it should have used the prepermanent plan presumption of return of sections 366.21 and 366.22, not the best interest test of section 388. We affirm.

## FACTUAL AND PROCEDURAL SYNOPSIS

### I. *Detention*

Jacob, Jeremy and their older half sister Andrea[2] came to the attention of the Department on May 20, 2003, as a result of a referral alleging physical and emotional abuse by appellant. During the investigation, it was revealed appellant had a history of substance abuse, engaged in domestic violence, physically and emotionally abused the children, and had a criminal history.

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] Only Jacob is a subject of this appeal. The court terminated jurisdiction over Andrea during these proceedings.

The three children had been living with the maternal grandmother since January. Appellant had provided little support for them.

On May 27, the Department filed a petition on behalf of the children. That day, the juvenile court found a prima facie showing had been made and ordered the children detained in the maternal grandmother's home.

## II. Jurisdiction/Disposition

In June, the Department reported that when Jacob was interviewed, he stated appellant and Stephen P., his father, fought only one time and appellant did not physically abuse him, but she did yell at him a lot. Jacob had seen appellant using drugs and smelled drugs in the home. Jacob wanted to live with his grandmother. Appellant was not interviewed as she had a pregnancy-related emergency. Appellant was incarcerated.

After mediation, appellant agreed to submit on an amended petition[3] and to participate in reunification services. On July 9, appellant and Stephen submitted on the amended petition on the basis of the Department reports. The court found the allegations of the amended petition true, declared the children dependents of the court, and placed them with the maternal grandmother under Department supervision. The court approved a reunification plan for appellant requiring her to participate in drug rehabilitation with random testing, parenting education, an anger management program and individual counseling to address domestic violence. The court granted appellant monitored visits.

## III. Reunification

During the first six months of reunification, Jacob and his siblings remained placed with the maternal grandmother and reportedly were doing well.

Although appellant initially enrolled in anger management, domestic violence and individual counseling, she had made little progress toward reunification and had "significant legal problems." Appellant missed many drug tests and tested positive. Appellant completed a parenting program, but then she dropped out of all programs and stopped testing. Appellant maintained contact with the Department and visited the children weekly.

---

[3] The amended petition alleged appellant had used inappropriate physical discipline, had engaged in physical confrontations in front of the children and had an unresolved history of substance abuse.

On January 7, 2004, the court ordered the Department to provide appellant with another six months of reunification services.

During the second six months of services, Jacob and his siblings remained placed with the maternal grandmother and were happy in their placement and close to their grandmother. Jacob was attending Almansor Center, a special school, and therapy due to significant behavior problems and special needs. Jacob and Jeremy both stated they wanted their grandmother to become their legal guardian.

In July, the Department reported appellant had moved to Colorado without notifying it and obtained employment, but she was not working on her reunification plan. Appellant occasionally visited and called the children twice a week.

On September 13, the court ordered appellant's reunification services terminated. The court set a permanency plan hearing for guardianship for Jacob and Jeremy for January 11, 2005.

On October 18, the court ordered appellant's educational rights over Jacob limited and appointed the maternal grandmother to make any such decisions.

IV. *Permanency Planning*

On January 11, 2005, the section 366.26 hearing (366.26 hearing) was continued for "further preparation."

In March 2005, the Department reported the children remained placed with their maternal grandmother, and Jacob continued to attend Almansor Center and therapy due to his special needs. Despite attending different schools, Jacob and Jeremy were close to one another. Appellant contacted the children by phone on a weekly basis.

On March 15, the court granted a permanent plan of legal guardianship and appointed the maternal grandmother as the guardian for Jacob and Jeremy.

In September, the Department reported the children continued to reside with their grandmother and Jacob continued to attend Almansor Center and therapy. Jacob and Jeremy participated in extracurricular activities together despite attending different schools. Appellant had not visited recently, but she called the children weekly.

On September 12, the court continued legal guardianship as the permanent plan and set the next review hearing for March 13, 2006.

### V. *Section 388 Petition*

On March 9, 2006, appellant filed a section 388 petition seeking to set aside the legal guardianship and requested additional reunification services and immediate return of the children[4] to her custody. Appellant alleged she had made a new life in Colorado with a home and employment, completed her reunification service plan, the children were bonded to her, she believed they wanted to live with her, and she visited the children in California as often as possible and maintained daily contact with them by phone. Attached to the petition was proof that appellant had obtained an apartment and employment, participated in counseling, and completed programs in anger management, substance abuse with random testing, and parenting.

In the March report, the Department indicated Jacob remained in the home of his grandmother along with Jeremy and Andrea. Jacob and Jeremy had special needs. Jeremy was attending El Sereno Middle School and had an IEP (individualized educational plan) scheduled, and Jacob was still attending Almansor Center to address his behavioral problems. Jacob continued to attend therapy. Appellant visited on special occasions, and the visits were successful.

Jacob and Jeremy told the social worker they liked living with their grandmother, but they wanted to live with appellant because they could go to a better school in Colorado and missed appellant.

Appellant appeared at the March review hearing. The court granted a hearing on her section 388 petition and ordered the Department to prepare a report. The court approved unmonitored visits for appellant in California.

The Department's response to the petition confirmed appellant had completed outpatient substance abuse treatment, an anger management program, and submitted regular negative substance abuse tests. The Department opined an appropriate assessment regarding return of the twins to appellant could not be conducted until she had overnight visits with them and was exposed to their needs. The Department recommended an ICPC (Interstate Compact on the Placement of Children) (Fam. Code, § 7900 et seq.) evaluation of

---

[4] Jacob, Jeremy, Andrea and Jessie (who was born shortly after these proceedings were initiated).

appellant's home be conducted and, upon completion, appellant be granted overnight and weekend visits prior to the children being returned to her care.

On April 10, the court granted appellant's petition in part and ordered the Department to provide her with reunification services as to Jacob and Jeremy. The court ordered overnight visits for appellant in California and gave the Department discretion to grant overnight visits in Colorado. The court ordered an ICPC evaluation of appellant's home and set a review hearing pursuant to section 366.22 (366.22 hearing). The court stated it was not terminating the guardianship because it did not know the outcome of granting the additional services.

## VI. *Additional Reunification*

In July 2006, the Department reported there had been problems with the ICPC evaluation of appellant's home.

Jacob and Jeremy told the social worker they both wanted to visit appellant and spend the summer with her and would likely want to begin living with her. The Department recommended a summer visit be authorized from August 3 to September 5 (both boys were required to attend summer school). The court authorized the recommended visit.

In October, the Department reported Jacob and Jeremy remained placed with their grandmother and the placement was stable. The boys were attending the same schools as before. Jacob had been diagnosed with ADHD (attention deficit hyperactivity disorder) and depression and was taking medication and attending therapy. Jeremy was diagnosed as bipolar and was scheduled to begin individual counseling.

The summer visit had been successful; both boys were excited to see appellant, liked her neighborhood and apartment, which had a room for them, and liked appellant's friends and coworkers. Immediately after the visit, Jacob and Jeremy stated they were looking forward to living with appellant soon. Appellant was also excited about Jacob and Jeremy moving to Colorado to live with her. In September, although Jeremy said he still wanted to live with appellant, Jacob expressed some reservations because he was not sure he wanted to leave his friends and family behind. The Department recommended a continuance because appellant's ICPC evaluation was still pending final approval.

The court continued what it identified as a section 366.22 review hearing to December.

In an addendum report, the Department stated appellant's ICPC evaluation had been approved. When interviewed in September, October and November, Jeremy remained consistent about wanting to live with appellant. In September, Jacob stated he was unsure about wanting to live with appellant. In October and November, Jacob stated he did not want to live with appellant because he did not want to leave his friends and family in California and because Colorado was "boring." Jacob also stated he enjoyed the visits with appellant and felt safe with her. Appellant stated she understood Jacob's wishes, but she did not believe it was a good reason not to be reunified with her because he would make new friends after the move and could visit family in California during vacations. The Department agreed with appellant and recommended the court return Jacob and Jeremy to appellant's custody.

Appellant appeared at the December hearing. The court ordered Jeremy placed with appellant under Department supervision. At counsel's request, the court set the 366.22 hearing as to Jacob for contest and continued it to January. The court stated it recognized that in order not to return Jacob to appellant's custody, it would have to find a substantial risk of detriment and informed counsel it was his burden of proof to show detriment. The court ordered Jacob was allowed a holiday visit with appellant as worked out with the grandmother.

In January 2007, children's counsel asked to be relieved as to Jeremy and new counsel was appointed to represent him. The court continued Jacob's contested 366.22 hearing until February. The court noted, "the issue is is there a risk to determining returning Jacob to his mother. The issue is not what Jacob, who is 12, wants. It's is there a risk. That's what has to be shown. Otherwise the child will be returned to the mother."

On February 2, the court conducted the contested 366.22 hearing. Appellant was not present but was represented by counsel. The court announced: "All right. The matter is here for a .22 hearing. The issue is whether Jacob should return to his mother in Colorado." The hearing was conducted by argument.

Jacob's counsel informed the court that Jacob had told her he wanted to remain with his legal guardian, his grandmother, and his family in California. Counsel argued that removing Jacob from his grandmother would "create a substantial risk of detriment to his emotional well-being" because Jacob was bonded to his grandparents, had stability from family and friends, relied on his school counselors and psychiatrist, and his special needs were being met in California. Counsel further argued that even though appellant was in compliance with her reunification plan, "the totality of the facts" showed that

Jacob should not be returned to appellant because she had abused and neglected him and he remembered it.

Appellant argued (via counsel) she had worked very hard to turn her life around. Appellant's home had been approved by an ICPC evaluation and she was aware of Jacob's special needs. Jacob's twin brother was in her care and the twins should be together. Appellant understood Jacob needed a relationship with his family, including his grandmother, and appellant intended to support continuance of that relationship. Appellant argued that Jacob's wanting to remain in California was not a showing of a substantial risk of harm and requested he be immediately released to her. County counsel argued appellant "had made a lot of effort to have [Jacob] returned to her custody" and the Department was recommending his return.

The court opined, "Well, you know, there's actually two things going on here. We have .22 for the mother. But the child is in a legal guardianship. And for me to terminate that legal guardianship, I would have to proceed under 388. . . . I have to make findings of a substantial change of circumstances and what's in the minors best interests." The court found appellant had "accomplished a great deal" and it could not "make a finding that there's a risk." The court noted it had granted appellant additional reunification services after Jacob had been in a permanent plan, but it did not terminate the guardianship. Proceeding under the section 388 standard, the court found the circumstances had changed, but it was not in Jacob's best interest to terminate the guardianship because of his expressed concerns and desires, which the court described as significant. The court found there was a continuing necessity for the current placement, terminated appellant's reunification services, and ordered reasonable visitation for appellant and Jacob.

Appellant filed a timely notice of appeal from the order.

## DISCUSSION

I. *The court applied the proper standard in determining whether to return Jacob to appellant.*

In ruling on appellant's section 388 petition, the court first granted appellant additional reunification services and basically indicated it would consider terminating the guardianship depending on the outcome. At a review hearing, after receiving proof appellant had complied with her case plan, the court ordered an ICPC evaluation of appellant's home and subsequently permitted the twins to have a one-month summer visit with appellant in

Colorado. After the visit was successful, at another review hearing, the court addressed whether or not the twins should be returned to appellant's custody.

With respect to Jeremy, the court terminated its July 2003 placement order, placed him with appellant under a family maintenance plan, and set a review hearing pursuant to section 364. However, at Jacob's request, the court continued the hearing as to him for a contest. Initially, the court indicated the issue was whether there was a risk in returning Jacob to appellant, not what he wanted. Subsequently, the court stated that to terminate the guardianship it would have to proceed under section 388. The court found there was no risk to Jacob but determined it was not in his best interest to terminate the guardianship, i.e., place him with appellant. Appellant opines that the proper procedure to follow was the one used with respect to Jeremy.

■ Appellant contends that once a parent of a child with a permanent plan of legal guardianship has a section 388 petition for additional reunification services granted and has satisfactorily completed those services, when deciding whether the child should be returned to the parent's custody, the court should apply the prepermanent plan presumption of return set forth in sections 366.21 and 366.22 rather than the best interest standard of section 388.

" 'At the dispositional hearing, and at each review hearing prior to permanency planning, there is a statutory presumption that the child will be returned to parental custody. . . . At 6-, 12-, and 18-month review hearings the juvenile court must return the child to the custody of the parent unless it determines, by a preponderance of the evidence, that return of the child would create a substantial risk of detriment to the child's physical or emotional well-being.' " (*David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 789 [20 Cal.Rptr.3d 336].)

However, "After the termination of reunification services, a parent's interest in the care, custody and companionship of the child is no longer paramount. [Citation.] Rather, at this point, the focus shifts to the needs of the child for permanency and stability. [Citation.] . . . A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, what is in the best interest of the child. [Citation.]" (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464 [118 Cal.Rptr.2d 482]; see also *Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 704–705 [71 Cal.Rptr.2d 780] [discussing factors in addition to completion of a reunification plan that the court might consider in determining whether changing custody would be detrimental].)

Even though the court identified the review hearings following granting appellant's section 388 petition as 366.22 hearings, they are more analogous to hearings under section 366.3, which applies following an order for a permanent plan.[5] For a child in a placement other than the home of a legal guardian, section 366.3, subdivision (d) provides the status of the child shall be reviewed at least every six months. Subdivision (g) directs the court to consider all permanency planning options for such children or "if compelling reasons exist for finding that none of the foregoing options are in the best interest of the child, whether the child should be placed in another planned permanent living arrangement." (§ 366.3, subd. (g).) That subdivision further directs the court to order a section 366.26 hearing unless it determines by "clear and convincing evidence" such a hearing "is not in the best interest of the child" for certain specified reasons. (§ 366.3, subd. (g).) Furthermore, California Rules of Court, rule 5.740(a)(3) provides: "When legal guardianship is granted, the court may continue dependency jurisdiction if it is in the best interest of the child, or the court may terminate dependency jurisdiction and retain jurisdiction over the child as a ward of the guardianship." Thus, the Legislature has established the child's best interest as the test to make certain postpermanent plan decisions.

Implicit in appellant's position is an argument that even though this case is past the 18-month mark, she should have another chance even if it is not in Jacob's best interest to give her one, i.e., her interests should prevail over those of her child. We conclude that the Legislature's express preference for using a child's best interest to make custody determinations after the 18-month benchmark should prevail. Prior to the 18-month hearing, the presumption is a child should be returned to a parent unless there is substantial risk of detriment. (§§ 366.21, subd. (e), 366.22, subd. (a).) After the 18-month mark, rather than a negative finding of risk preventing return, a positive finding of best interest to return is needed. As observed in another context, "The two standards [best interest and detriment] are basically two sides of the same coin. What is in the best interests of the child is essentially the same as that which is not detrimental to the child." (*In re Randalynne G.* (2002) 97 Cal.App.4th 1156, 1169 [118 Cal.Rptr.2d 880].)

Citing *In re Sean E.* (1992) 3 Cal.App.4th 1594, 1599 [5 Cal.Rptr.2d 193], appellant reasons that once reunification services are ordered and there is a finding that potential reunification with the parent might be in the child's best

---

[5] Appellant argues that section 366.3 does not apply because it does not contemplate review hearings for cases such as this one where the court orders guardianship and retains jurisdiction. Although not directly covered by this section, it is more analogous than sections 366.21 and 366.22 because it deals with postdetermination of permanent plan hearings.

interest, there is an implied finding that if the parent's efforts are successful, it would be in the child's best interest to modify the existing permanent plan.[6]

In *Sean E.*, after setting a 366.26 hearing, the juvenile court granted the mother's section 388 petition finding further visitation with her was in the best interests of the children and there was a substantial probability she would be able to care for the children within six months, but the court did not order further reunification services which had been terminated previously. (*In re Sean E., supra*, 3 Cal.App.4th at p. 1598.) At the continued 366.26 hearing, the court terminated the mother's parental rights. (3 Cal.App.4th at p. 1599.) The appellate court noted that by refusing to grant further reunification services, the juvenile court impliedly found there was not a substantial probability the children could be returned to her within six months, which was contrary to its finding there was a substantial probability of return. (*Ibid.*) The Court of Appeal reversed the order reasoning that having granted the section 388 petition, the court necessarily set aside its previous order scheduling the 366.26 hearing so, because there was no hearing to conduct, the court could not proceed to terminate the mother's parental rights. (3 Cal.App.4th at p. 1599.)

Again citing to *Sean E.*, appellant asserts the court necessarily vacated its previous order and was required to set a section 366.21 or 366.22 review hearing.[7] Appellant does not identify the order to which she refers. First, the only order necessarily vacated by granting appellant's petition was the order terminating reunification services. The court, which expressly stated it was not terminating the guardianship, did not find that the twins' best interests would be served by placing them with appellant. Second, even if this court inferred the juvenile court believed reunification might be in the twins' best interests, to further infer that if the reunification services were successful, it was in the twins' best interests to modify the existing permanent plan would be inferring too much at this late stage of the proceedings.

■ Though usually the case, a parent's compliance with the case plan is not a guarantee the child will be returned to the parent. (See *Constance K. v. Superior Court, supra*, 61 Cal.App.4th at pp. 704–705; *Blanca P. v. Superior Court* (1996) 45 Cal.App.4th 1738, 1748 [53 Cal.Rptr.2d 687].) Hence, we

---

[6] Appellant suggests that a second section 388 petition to terminate a guardianship is necessary if the court only grants reunification services. The fact the court considered the issue of placement at a review hearing demonstrates a second petition is not necessary.

[7] Appellant argues it is irrelevant that the 366.26 hearing had already been held in this case. It is critical that appellant's section 388 petition was filed after the court had ordered a permanent plan for the twins. In *In re Sean E., supra*, 3 Cal.App.4th at page 1599, the Court of Appeal reasoned the juvenile court should have set an 18-month review hearing; in this case it was not required to do so as the proceedings were past that point.

disagree the court impliedly found that if appellant complied with the reunification services, it would be in the twins' best interests to return them to her; that is a separate question. Even assuming arguendo that such a finding could be implied, it would be a rebuttable presumption. In this case, the question whether to terminate the guardianship is something the court left to address if the placement was successful.

At the time of the contested hearing in February 2007, the twins had been living with the maternal grandmother for four years. To return to a presumption of return this late in the proceedings would be to ignore that relationship and the benefits of that placement. (See *In re Shirley K.* (2006) 140 Cal.App.4th 65, 72 [43 Cal.Rptr.3d 897].) Moreover, the court was proceeding under a section 388 petition; a proper procedure to use to terminate a guardianship. (See *In re Carlos E.* (2005) 129 Cal.App.4th 1408, 1418 [29 Cal.Rptr.3d 317].)

In *In re Michael D.* (1996) 51 Cal.App.4th 1074 [59 Cal.Rptr.2d 575], the mother filed a section 388 petition to modify her child's permanent plan and terminate a legal guardianship. Although the mother did not request and receive additional reunification services, she continued to make efforts to reunify with her child during the guardianship. (*In re Michael D.*, at pp. 1079–1081.) The court held that in order to modify the permanent plan, a parent was not required to prove detriment to the child by clear and convincing evidence, only that by a preponderance of the evidence that a change of circumstances and the child's best interest would be served by a change in placement to the parent's home because the thrust of the dependency scheme was for parents to correct earlier problems so as to reunite with their children. (*Id.*, at pp. 1081–1087; see also *In re Manolito L.* (2001) 90 Cal.App.4th 753, 760 [109 Cal.Rptr.2d 282] [the court stated it did not believe the Legislature intended different standards of proof to apply to the adjudication of a § 388 petition according to the issue adjudicated].) In the instant case, the court used the same test as *Michael D.*, but with different results.

"When making a custody determination in any dependency case, the court's focus and primary consideration must always be the best interests of the child. [Citations.] Furthermore, the court is not restrained by 'any preferences or presumptions.' " (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268 [5 Cal.Rptr.3d 261].)

Accordingly, we conclude the court used the correct standard when it considered whether it was in Jacob's best interest to be placed with appellant. Appellant argues the court improperly used two standards; however, no

question of Jeremy's best interest was raised at the time the court placed him with appellant.

## II. *The court did not abuse its discretion when it applied the best interest standard.*

Appellant contends the court abused its discretion when it refused to return Jacob to her custody. The court found it was not in Jacob's best interest to terminate his legal guardianship. " 'This determination [of whether or not to terminate a legal guardianship] was committed to the sound discretion of the juvenile court, and the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established. . . . As one court has stated, when a court has made a custody determination in a dependency proceeding, " 'a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' " (*In re Michael D., supra,* 51 Cal.App.4th at p. 1087.)

Appellant cites the factors for evaluating a section 388 petition set forth in *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532 [65 Cal.Rptr.2d 495]: the seriousness of the problem leading to the dependency; the strength of relative bonds between the child and both the parent and the caretaker; and the degree to which the problem may be/has been easily removed. Appellant notes that although the problem (which she describes as substance abuse) leading to the dependency was serious, it has been completely ameliorated (and she addressed it on her own). The *Kimberly* factors are not meant to be exhaustive. (*Ibid.*) This case turns on the question of Jacob's best interest.

Appellant asserts Jacob had a sufficient bond with her to show returning to her care was in his best interest as he missed her and wanted to live with her during most of the time he was placed with his grandmother. Appellant notes that it was only after being back in California for a couple of months that Jacob decided he did not want to move to Colorado; even though he admitted he enjoyed the visit and felt safe with appellant, he "just did not want to move to Colorado because it was 'boring.' " Furthermore, appellant argues the relationship of the children must be considered because they are twins and share a unique bond. Lastly, appellant states that Jacob's desire became the sole basis for the court's decision, and, although a child's wishes may be evidence of what is in his best interest, they cannot be dispositive. (*In re Michael D., supra,* 51 Cal.App.4th at p. 1087.)

We conclude the court's decision was not based on Jacob's stated desire to remain in California but the reasons for that desire, which were based on

more than boredom. The court described the reasons as significant. Appellant disputes and discounts the arguments of Jacob's counsel that the twins were comfortable with separation[8] and that Jacob was afraid to live with appellant. The hearing proceeded by way of argument. The court was entitled to presume that as an officer of the court, counsel correctly represented Jacob's concerns. Jacob, who was almost 13 years old, was present at the hearing. Counsel stated Jacob wished to remain in California and relied on his grandparents for emotional support and his extended family to provide him with stability. Moreover, counsel indicated Jacob remembered appellant's abuse and neglect.

Appellant is looking at the facts from her perspective not Jacob's perspective. Appellant may have ameliorated the problem leading to the dependency on her own, but only after she failed to complete the services offered by the Department. Jacob had lived with his maternal grandmother for four years and had limited contact with appellant during that time, mostly by telephone. The record shows the twins liked living with their grandmother and, at least initially, wanted her to be their legal guardian. Jacob decided he preferred staying with his grandmother after visiting appellant. The dependency was not based solely on substance abuse, but also on allegations appellant physically abused the children and had a history of violent behavior, which supports Jacob's concerns about living with appellant.

The twins were both special needs children, but they did not have the same special needs. Jacob had attended a special school and been in therapy for significant behavior problems and special needs during the entire time he was placed with his grandmother. Jacob was eventually diagnosed with ADHD, and he suffered from depression and was taking medication. Jeremy was in regular school although an IEP was scheduled after the section 388 petition was filed, and he was diagnosed as bipolar. A Department report filed in response to the section 388 petition indicated Jeremy was to begin counseling. In addition to Jacob's family and friends, he was receiving support from his school counselors and therapist.

■ Although a close question, particularly as the boys are twins, we cannot conclude the court abused its discretion when it found it was not in Jacob's best interest to terminate his guardianship.

---

[8] At a prior hearing, the children's counsel stated the twins were comfortable with and respected each other's decision.

## DISPOSITION

The order is affirmed.

Perluss, P. J., and Zelon, J., concurred.