Filed 2/2/21  In re Jn.B CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re Jn.B. et al., Persons Coming Under the Juvenile Court Law. | D077885 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J520273A-B) |
| v. | |
| K.H., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and J. Jeffrey Bitticks, Deputy County Counsel, for Plaintiff and Respondent.

In this dependency proceeding, the court removed Jn.B. (age 13) and her brother, Ji.B. (age 11) (together, the children), from J.B. (Father) due to

his physical abuse. K.H. (Mother), who lives in New Mexico, requested custody of the children. (Welf. & Inst. Code, § 361.2.)[1] Mother appeals the juvenile court's dispositional order denying her request for placement. Because there is substantial evidence that respondent San Diego County Health and Human Services Agency (Agency) met its burden to show clear and convincing evidence that placement with Mother would be detrimental to the children, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Mother met Father when she was 12 years old and he was 14 years old. She became pregnant with Jn.B. when she was 13 years old. She gave birth to Ji.B. approximately two years later. She coparented with Father while he lived in foster care. The maternal grandmother also helped care for the children. In 2011, when the children were approximately two and four years old, Mother left Father due to his alleged infidelity.

In 2013, Mother became pregnant with her third child and informally gave the maternal grandmother custody of the children because she was homeless and unable to care for them. The maternal grandmother moved to New Mexico with the children. In 2015, Mother also moved to New Mexico to live with the maternal grandmother and the children. Child welfare services intervened with the family after the maternal grandmother hit Jn.B. in the face with a wire hangar.[2] In 2018, the family and authorities agreed that the children would live with Father in San Diego. Thereafter, Mother claimed

---

1    Undesignated statutory references are to the Welfare and Institutions Code.

2    In 2015 and 2016, Mother had several law enforcement contacts in New Mexico involving " '[d]angerous drugs, conditions for sale,' " felony drug possession, contributing to the delinquency of a minor, concealing identity, and shoplifting.

2

she spoke to the children weekly but Father would not let her talk to the children unless she sent him support money. Eventually, Father denied her all access to the children and she lost contact with them.

In the meantime, Father and the children initially lived with the paternal grandmother, then out of a car, and finally at a homeless shelter. In late January 2020, the paternal grandmother took Ji.B. to an emergency room.[3] Doctors found bruising on Ji.B.'s head and face and strangulation marks on his neck. Jn.B. reported that Father beat Ji.B. daily and also forced her to hit Ji.B. As forms of discipline, Father made Ji.B. stand in a corner all night, took away his food if he ate too slowly, and denied him water. Father also hit and slapped Jn.B. The children did not feel safe with Father and wanted to live with their paternal grandmother.

In February, the Agency filed petitions on behalf of the children pursuant to section 300, subdivision (a), alleging that Father physically abused and inappropriately disciplined the children. The Agency initially detained the children with the paternal grandmother, and then moved them to the non-relative extended family member home of T.F. The juvenile court issued a temporary restraining order protecting the children from Father. The Agency also located Mother in New Mexico who expressed "shock[]" about the physical abuse allegations.

At that time, Mother was unemployed but looking for work. She received financial support from the maternal grandmother and food stamps. She lived in a one bedroom apartment with her three-year-old daughter and stated that Catholic Charities had agreed to subsidize her rent for two years. Mother admitted methamphetamine use for one and a half years, but claimed that she quit on her own two years ago. Mother reported that she had

---

[3]     Undesignated date references are to 2020.

" 'made a lot of progress' " since the children left her care, and was " 'ready to be their mother.' "

At the jurisdictional and dispositional hearing in late February, the parents made their first appearance, were appointed counsel, and arraigned. Mother requested custody of the children, but the juvenile court deferred the request.

At the contested jurisdictional and dispositional hearing on August 31, the juvenile court sustained the petitions, declared the children to be dependents of the court, denied Mother's request for placement, ordered that she receive reunification services, and denied reunification services to Father.[4] It also ordered an Interstate Compact on the Placement of Children report to address the propriety of placing the children with Mother, that the Agency make every effort to facilitate visits with Mother at least once a month, and required that Mother participate in individual therapy and conjoint therapy when appropriate. Finally, the court issued a three-year restraining order protecting the children from Father. Mother timely appealed.

## DISCUSSION

A. *Relevant Law and Standard of Review*

At the jurisdictional hearing, the juvenile court must decide whether a child falls within any of the categories set forth in section 300. (*In re Michael D.* (1996) 51 Cal.App.4th 1074, 1082.) If so, the child may be declared a dependent of the court. (*Ibid*.) " 'Then, at the dispositional hearing, the court must decide where the child will live while under its supervision, with the paramount concern being the child's best interest. [Citation.]' " (*Ibid*.)

---

[4]    Father is not a party to this appeal.

4

The juvenile court has the authority to remove a child from a parent's physical custody pursuant to section 361. If the court does so, and there is a previously noncustodial parent who desires to assume custody of the child, the court "shall" place the child with the parent "unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) In evaluating possible detriment under section 361.2, subdivision (a), a court must consider all relevant factors and determine whether the child would suffer net harm if placed with the noncustodial parent. (*In re Liam L.* (2015) 240 Cal.App.4th 1068, 1086 (*Liam L.*).) "[A] finding of detriment is equivalent to a finding that placing the dependent child with the noncustodial parent is not in the child's best interests." (*Ibid.*)

A finding of detriment pursuant to section 361.2, subdivision (a), must be made by clear and convincing evidence. (*In re Abram L.* (2013) 219 Cal.App.4th 452, 461.) "Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt." (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426.) Keeping in mind the clear and convincing standard of proof applicable at the trial court level, we review the court's detriment finding under section 361.2 for "substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005.) " 'If there is substantial evidence to support the findings of the juvenile court, we uphold those findings. [Citation.] We do not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts. Rather, we draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other

5

evidence supports a contrary conclusion. [Citation.] The appellant has the burden of showing the finding or order is not supported by substantial evidence.'" (*Liam L.*, *supra*, 240 Cal.App.4th at p. 1087.)

B. *Substantial Evidence Supports the Dispositional Order*

In denying Mother's request for placement, the juvenile court found that Mother had a relationship with her children, but found the nature of the relationship to be "caustic" and "volatile" and thus detrimental to the children. The court explained that Mother "either directly or indirectly" put a great deal of guilt on Jn.B. and created an emotional environment where Jn.B. was "extremely confused as to where to go and what to do and who to turn to." Regarding Ji.B., the court stated that he "just flat out is not ready [to return to Mother]. He needs a great deal of therapy to address his needs and concerns."

Mother contends the juvenile court erred when it failed to follow the mandate of section 361.2 and place the children with her because substantial evidence did not support the juvenile court's finding by clear and convincing evidence that placing the children with her would be detrimental to them. We disagree.

The record shows that Mother abandoned the children first with the maternal grandmother and then with Father. Although Mother travelled to San Diego eight or nine times while the children lived with Father, she failed to visit them. When Mother called the children during the pendency of these proceedings, Jn.B. frequently refused to speak to her. During a supervised visit on July 23, the social worker reported that Mother and Jn.B. "were not getting along" and Ji.B. remained quiet.

During calls, Mother used guilt to manipulate the children. On March 4, Jn.B. told her caregiver that she did not want to talk to Mother

because Mother's questions made her feel "guilty" and she believed Mother had not changed. During a telephonic Child and Family Team meeting on March 11, Mother spoke to the children directly claiming she was " 'a changed person' " and telling them "over and over again" how much she loved them causing Jn.B. to cry and Ji.B. to cry "hysterically." Both asked to be excused from the meeting. The facilitator informed Mother that the children become upset when Mother "keeps telling them that she loves them and they feel like they are being forced to say it back." During a call on May 11, Mother complained " 'You guys don't ever call me' " which caused Ji.B. to start crying. The social worker noted that the children did not trust that Mother had changed, they felt safe in their current placement and were afraid of instability with Mother.

During the pendency of these proceedings Jn.B. vacillated on where she wanted to live. In early August, she stated that she wanted to live with Mother and then stated she was unsure where she wanted to live. Later that month, she stated that she wanted to live at San Pasqual Academy and not with Mother. At the hearing, Jn.B.'s counsel informed the court that "minutes before" the hearing Jn.B. stated that she wanted to return to Mother's care, but counsel questioned the sincerity of the statement.

When initially asked about living with Mother Ji.B. responded, "I kinda don't want to. When we were in New Mexico, my mom was doing drugs and we had to live with grandma." Ji.B. expressed concern that if Mother is still on drugs "we will be stuck out there." On August 19, when again asked about living with Mother Ji.B. told the social worker, " 'I don't think [she] is ready for us to come home,' " that he did not believe Mother would take good care of him and "it would be a good idea to have more visits" with Mother. The social worker noted that Ji.B. has only had one visit with Mother in almost three

years.  Although the children's wishes are not dispositive, they are relevant and the juvenile court could consider this factor in determining the children's placement.  (*In re A.C.* (2020) 54 Cal.App.5th 38, 43 (*A.C.*).)

The social worker reported that Mother made minimal progress on her case plan, stating that Mother needed to restart her parenting class, missed sessions with her therapist and needed to start with a new therapist because "things did not work out" with the first therapist.  Additionally, neither child had begun individual therapy.  Notably, Father's cruel treatment caused Ji.B. to suffer from encopresis and enuresis.  During the course of the proceedings Jn.B. began displaying "concerning and defiant behavior" and the social worker reported that Jn.B. "has a difficult time calming herself down and responding appropriately to situations."  On these facts, the social worker correctly questioned whether Mother would "know how to appropriately deal with [Jn.B.'s] behaviors and seek the therapy [Jn.B.] seems to need at this time to help her understand her current situation and stabilize."  Even Mother's case manager with Catholic Charities recommended that Mother and the children participate in conjoint therapy before placing the children with Mother.

Mother argues that even if the juvenile court believed her relationship with the children to be minimal, the lack of a significant relationship between them did not make the children's placement with her detrimental to them within the meaning of section 361.2.  A child's lack of contact with the noncustodial parent cannot be the sole basis for a detriment finding.  (*In re K.B.* (2015) 239 Cal.App.4th 972, 981.)  Here, however, the juvenile court did not cite the strength of the children's relationship with Mother as a relevant factor; rather, it noted the unhealthy nature of the relationship, a finding Mother did not challenge.

Finally, Mother's contentions that she would be able to meet the children's needs and did not act in a manner incompatible with parenthood are misplaced. Our job is to consider whether the record contains "substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by [the clear and convincing] standard of proof." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1005.) Assuming the veracity of Mother's contentions, we must presume that the juvenile court considered this evidence, together with all other relevant evidence discussed above, in finding that it would be detrimental to the children to be placed with Mother. (Cf. *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [trial court's judgment or order is presumed correct].) As previously noted, on appeal, this court does not reweigh the evidence in determining whether the juvenile court's ruling is supported by substantial evidence. (*Liam L.*, *supra*, 240 Cal.App.4th at p. 1087.)

"A court properly may decline placement with a safe and nonoffending parent if that placement would be detrimental to the child's emotional well-being." (*A.C.*, *supra*, 54 Cal.App.5th at p. 46.) Based on the totality of the evidence, the juvenile court could reasonably find, by clear and convincing evidence, that it would be detrimental to the children's emotional well-being if they were to be placed with Mother. (§ 361.2, subd. (a).) Accordingly, we conclude the juvenile court did not err by denying Mother's request for placement.

## DISPOSITION

The juvenile court's finding of detriment and its order denying Mother's request for placement under section 361.2 are affirmed.


GUERRERO, J.

WE CONCUR:


IRION, Acting P. J.


DO, J.