Filed 5/14/14  In re Isaac J. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re ISAAC J., Persons Coming Under the Juvenile Court Law. | D064730 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ11945B-C) |
| v. | |
| N.J. et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Cynthia Bashant, Judge.  Affirmed.

Neil R. Trop, under appointment by the Court of Appeal for Defendant and Appellant, N.J.

Kathleen Murphy Mallinger, under appointment by the Court of Appeal for Defendant and Appellant, A.C.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Georgia A. Gebhardt, Deputy County Counsel, for Plaintiff and Respondent.

N.J. appeals the termination of her parental rights to her son Isaac J. and daughter Asia C. (together, the children). N.J. contends the juvenile court erred by declining to apply the beneficial relationship exception (Welf. & Inst. Code,[1] § 366.26, subd. (c)(1)(B)(i)) to termination and there is insufficient evidence of the children's wishes and understanding of adoption to support the adoptability finding. Asia's father, Anthony C. also appeals; he joins in N.J.'s contentions regarding Asia. We affirm.

BACKGROUND

In December 2010, the San Diego County Health and Human Services Agency (the Agency) filed dependency petitions for five-year-old Isaac and two-year-old Asia. The petitions alleged the children were exposed to violent confrontations among N.J., Anthony and other adults. The children were detained in Polinsky Children's Center then moved to a foster home. In February 2011, the court made true findings on the petitions, ordered the children placed in foster care and ordered reunification services. In May, the children were moved to a new foster home. In December, they were detained in Polinsky Children's Center because their foster home was being investigated, then moved to a third foster home. In April 2012, the children were placed with N.J.

---

[1]      All further statutory references are to the Welfare and Institutions Code.

In December 2012, the Agency filed supplemental petitions (§ 387) alleging N.J. had a verbal altercation with a roommate, then left the children with the roommate, knowing the roommate was unable and unwilling to care for the children. Additionally, N.J. expressed thoughts of suicide and her own inability to care for the children. The children were detained in Polinsky Children's Center. In January 2013, they were moved to a concurrent foster home. In February, the court made true findings on the supplemental petitions, terminated reunification services and set a section 366.26 hearing. In October, the court terminated parental rights.

ADOPTABILITY

The Agency's "assessment . . . shall include . . . : [¶] . . . [¶] . . . a statement from the child concerning . . . adoption . . . , unless the child's age or physical, emotional, or other condition precludes his or her meaningful response, and if so, a description of the condition." (§ 366.21, subd. (i)(1)(E).) At the section 366.26 hearing, "the court shall consider the wishes of the child and shall act in the best interests of the child." (§ 366.26, subd. (h)(1).) "While there is some disagreement whether evidence of the child's wishes must reflect his or her awareness that termination of parental rights is at issue (compare *In re Diana G.* (1992) 10 Cal.App.4th 1468, 1480 with *In re Leo M.* (1993) 19 Cal.App.4th 1583, 1592-1593), it is clear that a direct statement from the child is not required where this is contrary to the child's best interest ([*Leo M.*], at p. 1592)." (*In re Amber M.* (2002) 103 Cal.App.4th 681, 687, parallel citations omitted.)

In June 2013, the social worker spoke with seven-year-old Isaac and five-year-old Asia. Neither child had expressed an understanding of the word "adoption." The social

3

worker explained to Isaac "that adoption meant living with the caregiver as a part of her family until he grows up," and asked "if this was what he would like." Isaac said, "I don't know." Isaac also said "that he did not want to live anywhere else, especially until next year, as he said that he was looking forward to some future field trips at school." The social worker explained to Asia "that adoption meant living with the caregiver forever, and asked her whether this is what she wanted . . . ." Asia said, "Yes." N.J. contends the social worker's explanations did not inform the children that adoption would terminate their relationship with N.J.; the explanations also describe guardianship and long term foster care; and the social worker did not discuss the option of guardianship with the children. N.J. concludes that the children's responses shed no light on their feelings about adoption.

Assuming, without deciding, that "evidence of the child[ren]'s wishes must reflect [their] awareness that termination of parental rights is at issue" (*In re Amber M.*, *supra*, 103 Cal.App.4th at p. 687), the social worker was not the only source of information available to the children. The children's trial counsel had a duty to interview them, determine their wishes and advise the court of those wishes. (§ 317, subd. (e)(2).) "We must assume in the absence of . . . evidence to the contrary that [the children]'s counsel complied with the code's mandate . . . ." (*In re Jesse B.* (1992) 8 Cal.App.4th 845, 853.) In closing argument, the children's counsel stated that since June 2013 Asia had been "pretty consistent" in her statements that she wished to be adopted. The foster parent reported that Isaac had told her that he wished to be adopted, and Isaac's therapist reported that Isaac knew the meaning of adoption.

4

Construing the record in the light most favorable to the judgment (*In re Josue G.* (2003) 106 Cal.App.4th 725, 732), substantial evidence supports the adoptability finding (*In re Lukas B*. (2000) 79 Cal.App.4th 1145, 1154).

## THE BENEFICIAL RELATIONSHIP EXCEPTION

If a dependent child is adoptable, the court must terminate parental rights at the section 366.26 hearing unless the parent proves the existence of a statutory exception. (§ 366.26, subd. (c)(1); *In re Helen W*. (2007) 150 Cal.App.4th 71, 80-81.)  An exception exists if a parent has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i).)  A beneficial relationship "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents."  (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 575.)  If terminating parental rights "would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome . . . ."  (*Ibid*.)  The existence of a beneficial relationship is determined by factors such as "[t]he age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs . . . ."  (*Id*. at p. 576.)  Examining the evidence in the light most favorable to the judgment (*ibid*.), we conclude substantial evidence supports the court's conclusions that although N.J. visited regularly, the children's best interest and need for stability outweighed "whatever relationship" they had with her.

In November 2009, before this case began, the children were detained in Polinsky Children's Center for a couple of days after N.J. was arrested for domestic violence. This case lasted for nearly two years, during which time the children were in N.J.'s care for approximately eight months. At the time of the section 366.26 hearing, eight-year-old Isaac and five-year-old Asia had not lived with N.J. for approximately 10 months and had lived with their foster parent for approximately 10 months. The foster parent wished to adopt the children.

N.J.'s visitation with the children was generally positive, although she was sometimes inappropriate. The children had a bond with her. Unsurprisingly, the bond was an anxious one; in N.J.'s care, the children had been exposed repeatedly to violence, substance abuse and homelessness. The children enjoyed visits, but sometimes appeared ambivalent about or indifferent to contact with N.J. The children showed little or no emotion toward N.J. when visits ended and avoided her attempts to elicit signs of affection.

The children felt more secure with their foster parent than they did with N.J. The children were happy in the foster home and wished to remain there and be adopted. Of her own accord, Asia sometimes called the foster parent "mom." Isaac, who was generally reserved, had become warmer and more expressive with the foster parent. Isaac liked the structured environment of his placement. When given a homework assignment of drawing a picture of his family, he drew his foster parent, Asia and himself, and not N.J. Adoption offered the children the permanence, stability, security and consistency they deserved and that N.J. had been unable to provide.

N.J. contends the parent-child bond was so strong that guardianship would be a better permanent plan than adoption.  This contention fails.  Adoption is the preferred plan, and if a child is adoptable, the court must terminate parental rights at the section 366.26 hearing unless the parent proves the existence of a statutory exception.  (§ 366.26, subd. (c)(1); *In re Helen W.*, *supra*, 150 Cal.App.4th at pp. 80-81.)  N.J. did not prove the existence of a statutory exception.

The court did not err by declining to apply the beneficial relationship exception.

DISPOSITION

The judgment is affirmed.

NARES, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.